# GENERAL COURT, MAY TERM, 1800.

## GITTINGS's Lessee *vs.* HALL.

A person being in possession of part of a tract of land under a deed conveying to him the whole tract, may grant the whole by a deed of bargain and sale, without entering on that part of which he is not in possession, notwithstanding an adverse possession by enclosures.

EJECTMENT for part of a tract of land called *Hill's Forest,* lying in Baltimore county. Defence on warrant, and plots returned.

1. The defendant at the trial, offered evidence to the jury to prove, that *Walter Tolly* was in the actu-

Where a grantor conveys land by name, and lays the same off by actual survey, excluding a part so conveyed, it will not control the operation of the deed to pass the whole.

An attested copy of a deed not required by law to be enrolled, cannot be received in evidence, unless the original be lost, and possession of the land has been held under it for forty years.

To constitute a deed of bargain and sale there must be a money consideration expressed therein.

The court are to decide, on inspection, whether or not a deed was indented, and the original must be produced for that purpose.

A conveyance of land acknowledged by the grantor before two justices of the peace, in a county in which he did not reside, and wherein the land is not situated, held to be inoperative.

Parol evidence may be received to prove that a grantor, although stated in the deed to reside in a particular county, was a resident of the county in which the deed was acknowledged.

The jury were directed to presume a valid deed had been executed, after a defective conveyance had been refused to be permitted to be given in evidence, there being evidence of possession by and under the grantee in the deed.

The defendant cannot prove on the trial that the locations made on the plots in the cause were not in compliance with his instructions to the surveyor.

To prove a witness interested in the event of the suit, by holding land interfering with that in dispute, the land claimed by the witness must be located on the plots.

A land commission under the act of 1723, ch. 8, and depositions taken thereunder, not received in evidence, it not appearing that the *specific* notices required by that act had been given.

Where the plaintiff in ejectment locates his pretensions on the plots in two ways, and there is a general verdict and judgment thereon rendered, such judgment is void for uncertainty.

The court of appeals will take notice of testimony improperly admitted in evidence in the court below, although it was not objected to and made no part of the question decided by the court below.

The court of appeals will not give an opinion on any abstract proposition.

al possession, by enclosure, of the land contained within the fence located on the plots, claiming the same as his own, at the time *James Bosley* executed the deed to *George Buchanan* of the 16th of June 1784, for part of *Hill's Forest*, containing 431 acres more or less, it being the tract or parcel of land conveyed by *Ogle* and wife to the said *Bosley*; and that the said *Bosley*, in laying off the said land to the said *Buchanan*, laid the same down by actual survey with the said fence, excluding the possession of the said *Tolly*; and that the said *Tolly*, and the defendant claiming under him, continued the said possession by actual enclosure, during the whole time that the said *Buchanan* claimed the land called *Hill's Forest*, for which this ejectment is brought, and at the time the said *Buchanan* made the deed to the lessor of the plaintiff, (28th December 1789,) and to the time of bringing the present ejectment.

The defendant prayed the opinion of the court, and their direction to the jury, that if they find the above facts to be true, that then the said deeds (*Bosley* to *Buchanan*, and *Buchanan* to the lessor of the plaintiff,) cannot operate to convey any title to the land so enclosed, possessed, and claimed by the defendant.

CHASE, Ch. J. (a)—The court are of opinion, that as *James Bosley* was in possession of part of the land conveyed to him by *Benjamin Ogle* and wife, and *George Buchanan* was in possession of the same land conveyed by *James Bosley* to *George Buchanan*, it was not necessary for *George Buchanan* to enter on that part of the land contained within the enclosure of *Walter Tolly*, described above, at the time of making the said deed of bargain and sale from *George Buchanan* to the lessor of the plaintiff, in order to give it validity, and make it operate as such; and that *Bosley's* laying down the same land by actual survey, with the fence, excluding the possession of the said *Tolly*, cannot affect or control the operation of the said deeds, or affect their validity to pass the same land.

(a) *Duvall and Done, J.* concurring.

MAY 1800.

Gittings
vs:
Hall.

An ancient deed, not having the words *This Indenture*, and no money consideration being expressed therein, an attested copy thereof of not permitted to be read in evidence.

Whether or not a deed was indented, is for the court to decide, on inspection of the original.

A copy of a deed, which does not require enrolment, cannot be received in evidence, unless the original is lost, &c How a copy, in case the original is lost, &c must be proved

A copy from the record may be received in evidence if possession of the land has gone accordingly for 40 years

The court refuse to give the direction to the jury as prayed by the counsel for the defendant. The defendant excepted.

2. The plaintiff offered to read in evidence to the jury, to shew title to the land in the declaration of ejectment mentioned, the exemplification of a deed from *Henry Hill* to *Joseph Hill,* in the following words, to wit:

"To all christian people to whom these presents shall come. *Henry Hill,* of Anne-Arundel county, in the province of Maryland, sendeth greeting, &c. Know ye, that I the said *Henry Hill,* as well for and in consideration of the natural love and affection which I have and do bear unto my dear and well beloved son, *Joseph Hill,* of the county and province aforesaid, as also for divers other good causes and considerations me thereunto moving, have given, granted, made over and confirmed, and by these presents do give, grant, make over and confirm, unto my said son, *Joseph Hill,* his heirs and assigns for ever, the several tracts or parcels of land following; that is to say, one tract or parcel of land situate, lying and being, in the fork of Gunpowder River, in Baltimore county, called and known by the name of *Hill's Forest,* and containing a thousand acres more or less; two other tracts or parcels of land situate, lying and being, on the north side of Little Choptank River, in Dorchester county, the one called *Tench's Hope,* containing two hundred acres, the other called *Ragged Point,* containing four hundred and forty acres, or thereabouts, be the same more or less. To have and to hold the said several parcels of land called *Hill's Forest, Tench's Hope,* and *Ragged Point,* with all and singular the premises, rights, profits, advantages, emoluments and appurtenances, to the same belonging, or in any wise appertaining, unto him the said *Joseph Hill,* his heirs and assigns for ever, to his and their only proper use and behoof for ever more; together with the full, free, quiet, and absolute possession of the same, to all ends and purposes whatsoever. In witness whereof I have

hereunto set my hand, and affixed my seal, this twenty-seventh day of July seventeen hundred and thirty-seven. *Henry Hill,* (L. S.)

Signed, sealed and delivered,

in presence of

*John Brice,*

*Geo. Steuart,*

*Robert Gordon.*

On the back of the foregoing deed was thus endorsed, viz. Maryland, sc. July 27, 1737. Then came the within mentioned *Henry Hill,* and acknowledged the within deed of gift, according to the direction of the act of assembly, before me, the subscriber, one of his lordship's justices of the provincial court.

*Robert Gordon.*

July 29, 1737. Received of the within named Mr. *Joseph Hill,* for the use of the Right Honourable the Lord Baltimore, three pounds one shilling and eight pence, being for the alienation fines of the within mentioned lands. *Benja. Tasker.*

Recorded July the 29th, 1737.

Maryland, sc. I hereby certify that the foregoing is truly taken from Liber P. L. No. 8, folio 534, one of the land records of the late provincial court, remaining in and belonging to the office of the general court for the western shore.

In testimony whereof, to this ex-
(L. S.)  emplification, (the same being first duly stamped,) I hereunto subscribe my name, and affix the seal of the said general court, this seventeenth day of May, in the year of our Lord one thousand eight hundred.

*John Gwinn,* Clk. Gen. Court W. S."

The defendant, by his counsel, objected to the reading the said exemplification in evidence to the jury.

CHASE, Ch. J. The court are of opinion, that the copy of the deed from *Henry Hill* to *Joseph Hill* cannot be received as evidence, it not appearing by the copy to have the words THIS INDENTURE, and no money consideration being expressed in the deed, and therefore not a deed of bargain and sale.

May 1800.

Gittings
vs.
Hall.

The court are to decide, on inspection, whether or not the deed was indented; and the original deed must be produced, that the court may determine whether or not the deed was indented.

The court are also of opinion, that a copy from the record of a deed, which does not require enrolment, cannot be received in evidence; but that the deed itself must be produced as the best evidence.

If the original deed is lost, destroyed, or in possession of the adverse party, which must be proved to the court, a copy is admissible in evidence, if proved to be a true copy by a person who has compared it with the original; and a copy from the record may be received in evidence if possession has gone accordingly for upwards of thirty-nine or forty years.

The jury may presume a valid deed had been executed, although a defective deed is produced, there being evidence of possession of the land by and under the grantee in such defective deed.

A conveyance of land acknowledged by the grantor before two justices of the peace of a county in which he did not reside, and wherein the land is not situated, held to be inoperative.

Parol evidence may be received to prove that a grantor, although stated in the deed as residing in a particular county, was a resident of the county in which the deed was acknowledged.

The plaintiff then offered in evidence to the jury, the entry on the old *rent rolls* as to the possession, and as to the time when a deed had been executed from *Henry Hill* to *Joseph Hill*, in these words, to wit:

"1000 acres, 2*l*. yly. rent, *Hill's Forest*, sur. 4. Sept. 1683, for *Ri. Hill*, above ye head of Gunpowder river, on the So. side ye Nor. branch of ye said river, at a bounded red oak, and now belonging to *Joseph Hill*.

1000. *Joseph Hill* from *Henry Hill*, 27 July, 1737.

True copy from the old rent roll of Baltimore county, page 424. *Jno. Callahan.*"

The plaintiff also offered in evidence the will of *Henry Hill*, dated the 10th of February 1738-9, in which, though his property is very particularly and specifically devised, there is no mention of *Hill's Forest*, and in which will there is no residuary devise. The plaintiff also offered in evidence, the charge of *Hill's Forest* on the *Debt Books* of the then province of Maryland, as far back as the same can be found; that is to say, to the year 1754, first to *Joseph Hill* during his life, and until 1761, when he died; also *Joseph Hill's* will, dated the 20th of October 1761,

devising 200 acres, part of *Hill's Forest*, to *Joseph Richardson*, 200 acres, another part, to *Nathaniel Richardson*, and the residue thereof to *Henry Marga- ret Hill*, now *Henry Margaret Ogle*, his grand daughter and heir at law; also the charge in the said debt books in 1762, of *Hill's Forest* to *Joseph Hill's* heirs; also the further charge in the said debt books in 1771, of 200 acres, part of *Hill's Forest*, to *Joseph Richardson*; 200 acres, another part thereof, to *Na- thaniel Richardson*; and 600 acres, another part thereof, to Mrs. *Ogle* above named; also the regular conveyances to the present possessors of *Hill's Fo- rest* from *Joseph Hill*, above named, through his three devisees above named; that is to say, a deed stated to be dated the 25th of June 1777, and made by and be- tween *"Benjamin Ogle*, Esquire, and *Henry Margaret* his wife, of *Anne-Arundel County* in the state of Maryland, of the one part, and *James Bosley*, of *Charles*, of," &c. of the other part, for part of a tract of land called *Hill's Forest, lying in Baltimore county*, containing 431 acres; which said deed was acknow- ledged by the grantors *before two justices* of the peace for *Prince-George's county*, and it was certified by the clerk of Prince-George's county court, that the per- sons who appeared to have taken the said acknow- ledgments were, at the time, "justices of the peace for Prince-George's county *legally authorised and as- signed"*—and the said deed was recorded amongst the records of Baltimore county on the 20th of Sep- tember 1777; and a deed from the said *James Bosley*, of *Charles*, to *George Buchanan*, for the said land, dated the 16th of June 1784; and a deed from *Joseph Richardson*, of Dorchester county, to *Charles Wells*, dated the 27th of March 1779, for 200 acres, part of the said tract called *Hill's Forest*, devised to the said *Joseph Richardson* by *Joseph Hill*. This deed was acknowledged before two justices of the peace for Dorchester county, and it was certified by the clerk of that county court, that the persons who appeared to have taken the said acknowledgment were at the time "two of the justices of the peace in and for the

county of *Dorchester*, *duly commissioned and sworn;*" and was recorded amongst the records of Baltimore county on the 31st of July 1779; and a deed from *Charles Wells* to *George Buchanan*, dated the 9th of October, 1784, for 200 acres of land, part of *Hill's Forest*, the land conveyed by the said *Richardson* to the said *Wells*; and a deed from *George Buchanan*, to *James Gittings*, dated the 28th of December 1789, for the last above mentioned part of *Hill's Forest*; and a deed from the said *Buchanan* to the said *Gittings*, dated the said 28th of December 1789, for the part of the said tract of land called *Hill's Forest*, which had been conveyed, as herein before mentioned, by *Bosley* to the said *Buchanan*. The plaintiff also offered proof that there has been actual possession of *Hill's Forest*, by living on the same, under the title of *Joseph Hill* above named, ever since the year 1772; also proof that whilst it lay out in woods unoccupied, it was reputed to belong to a person of the name of *Ogle*, or to a person down the country; also the proof of Mr. *John Thomas*, aged 56 years and upwards, a person connected and well acquainted with the said *Hill* family, that in the said *Hill* family, *Hill's Forest* was always reputed to belong to the said *Joseph Hill*, and those claiming under him, and that he never heard that any other of the family claimed the same; that *Henry Hill*, son of Doctor *Richard Hill*, who was brother of *Joseph Hill*, and heir at law of *Henry Hill*, father of the said *Richard* and *Joseph*, was frequently in this state from the year 1761 to the year 1792; that about the years 1769, 1770 or 1771, the said *Henry Hill*, junior, spent the most of two years at the house of the said *John Thomas* in this state, in company with Mrs. *Ogle* above named, the then reputed owner of *Hill's Forest*; that Doctor *Richard Hill*, father of said *Henry Hill*, junior, and son of *Henry Hill*, senior, was born in this state, and that he came to this state in the year 1752, from the Island of Madeira, where he then resided, and staid here amongst his relations, in and about the city of Annapolis, for the space of one year; that the execu-

tors of the said *Joseph Hill*, and the said *John Thomas* as guardian of Mrs. *Ogle*, paid the quit rents on *Hill's Forest*, from the death of *Joseph Hill* until the marriage of Mrs. *Ogle*; also the proof that no person has held any part of *Hill's Forest*, claiming it as such, except those holding under the said *Joseph Hill*. There was no evidence that *Richard Hill*, the heir at law of his father *Henry Hill*, or that *Henry Hill*, the heir at law of *Richard Hill*, or any other person, ever claimed a right to *Hill's Forest*, or any part thereof, except the said *Joseph Hill*, and those claiming under him; and no title being now set up by the defendant under the heirs of *Henry Hill*, father of the said *Joseph Hill*.

The defendant, by his counsel, offered in evidence to the jury, that the tract of land called *Hill's Forest*, for which the present ejectment is brought, was granted to *Richard Hill* on the 10th of August 1684; and that the said *Richard Hill* left issue three sons, *Richard*, *Joseph* and *Henry*; that he made his last will and testament on the 20th of October 1700, and therein devised the said tract of land to his three sons as tenants in common in fee; that the said *Henry* survived his two brothers, and became sole seised in fee of the said land as heir to the grantee; that the said *Henry* had issue two sons, *Richard* the eldest, and *Joseph* the youngest; that *Richard* removed to the Island of Madeira and resided there many years; that he was there alive in the year 1750, and afterwards died there, leaving *Henry Hill*, of Philadelphia, his son and heir at law; that the said last mentioned *Henry Hill* died in Philadelphia in the year 1798, a man of large fortune and without children, and that his heirs are sisters and the children of his deceased sisters. That the plaintiff, to make title in this cause, having produced and offered to read in evidence an exemplification from the records of the general court of an instrument of writing from *Henry Hill* to his youngest son *Joseph*, bearing date the 27th of July 1737, which the court refused to permit to be read to the jury in support of the title, the defendant, by his counsel, of-

MAY 1800.

Gittings
vs.
Hall.

MAY 1860.

Gittings
vs.
Hall

fered in evidence the before mentioned entry on the rent rolls in the land office, referring to the date mentioned in the said exemplification, to account for the said entry being made on the said rent roll. The defendant further offered in evidence, that no actual possession or occupation of the land mentioned in the declaration of ejectment in this cause, nor of any part thereof, ever was at any time in any person claiming under *Joseph Hill*, in whom the lessor of the plaintiff sets up title; but that the whole of the said land was in woods and unoccupied until the year 1772, when *James Bosley*, under whom the lessor of the plaintiff claims, entered into a part thereof; and that the said *Joseph Hill*, nor any person claiming under him, ever made an entry on, or had the actual possession of any part of the land for which the defendant has taken defence upon the plots returned in this cause.

And the plaintiff, by his counsel, prayed the opinion of the court, and their direction to the jury, that from the whole of the evidence above stated on the part of the plaintiff, they may and ought to presume that a deed good and operative in law to convey the said land called *Hill's Forest*, was executed, and did pass the said land in fee from the said *Henry Hill*, the son of the original patentee, to *Joseph Hill* his son.

CHASE, Ch. J.   The court are of opinion, and so direct the jury, in case they find the several facts stated by the plaintiff to be true, although they should find the several facts stated by the defendant to be true, that the same facts so stated by the plaintiff are sufficient for the jury to presume, and they ought to presume, that the said *Henry Hill* did make and execute a good and sufficient deed, valid and operative in law, to transfer and pass the said land called *Hill's Forest* from the said *Henry Hill* to the said *Joseph*

Evidence is
not admissible to
prove that the lo-
cations made on
the plots in the
cause were not in
compliance with
the party's in-
structions to the
surveyor.

*Hill* and his heirs.   The defendant excepted.

3. The plaintiff by his counsel offered to read in evidence to the jury a location of a tract of land called *Holland's Park* on the plots returned in this cause, as

an act of the defendant evidencing the true location and position of the said tract called *Holland's Park.* The defendant, to show that the said location was not his act, offered to give in evidence to the jury his original instructions in writing to the surveyor as to laying down the said land; and the defendant offered to prove by the surveyor, that the location made and returned on the said plots, was made by misconception of the said instructions, and contrary to them.

*May 1800.*
Gittings
vs.
Hall.

CHASE, Ch. J. The court are of opinion that the testimony offered . on the part of the defendant is improper and cannot be received; and the court refuse to let the said evidence so offered by the defendant go before the jury. The defendant excepted.

4. The court in the course of the trial of this cause determined, that to prove a witness interested in the event, by holding land adjoining or interfering with the land in dispute, the land claimed or held by the witness must be located on the plots(*a*).

To prove a witness interested in the event of the suit, by holding land adjoining that in dispute, the land held by the witness must be located on the plots.

5. The court also determined in this case, that a land commission, and depositions taken in virtue of it, under the act of 1723, *ch.* 8, could not be received in evidence, unless it appeared by the certificate of the commissioners that the specific notices required by the act had been given; and that as the certificate of the commissioners to the commission produced in this case, only mentioned that the notices, directed by the act, had been given, it was defective, and did not entitle the party to read the commission and depositions in evidence(*b*).

A land commission, defectively executed, not permitted to be given in evidence, it not being stated that the specific notice required, had been given.

Verdict for the plaintiff to the full extent of his locations upon the plots returned in this cause, and judgment for the plaintiff for possession of the land mentioned in the declaration of ejectment, agreeably to the finding of the jury, and costs.

Where the plaintiff makes two locations of his pretensions on the plots, and there is a general verdict and judgment, such judgment is erroneous.

The defendant brought a *writ of error,* and the record of proceedings was removed to the Court of Appeals. At November term 1802, the cause came on. and was argued in that court.

(*a*) See the case of Chapline's Lessee, *vs.* Keedy, 3 Harris and M'Henry, 578.

(*b*) See *Weems' Lessee, vs. Disney,* 4 Harris & M'Henry, 156.

May 1800.

Gittings
vs.
Hall.

*Key, Harper, and Johnson,* for *Hall,* the plaintiff in error, contended,

1. As to the *first bill of exceptions.* That the deed of bargain and sale from *Buchanan* to the lessor of the plaintiff for *Hill's Forest,* could not operate to convey that part of the said land which was in possession of *Tolly* by actual enclosures, without an actual entry having been made by *Buchanan,* (he being out of possession) upon the part under enclosures at the time of executing the said deed to the lessor of the plaintiff. The question, they said, was whether or not *Buchanan* had possession of the land when he executed the deed? if he had not, his deed would not operate to convey the part of which he was not possessed. That *Bosley,* who sold to *Buchanan,* laid off the land to him, excluding *Tolly's* enclosure, in 1784, and *Tolly,* and those claiming under him, have been in possession ever since. *Buchanan* never was in possession of the part under enclosure; and although the land is included in *Hill's Forest,* yet as to that part under enclosure there has been a disseisen. As to what constitutes a *disseisen,* they cited *Co. Litt. s.* 279; & 1. *Burr,* 107. That a person disseised could not pass land by will nor convey without actual entry. 2 *Bac. Ab.* 52. *Shep. Touch.* 242. Where there are two tracts of land an entry into one tract will not vest possession in the other. *Co. Litt.* 15. *a.* 252. *b.* And if there is a disseisin of three several acres by three disseisors, an entry must be made on each acre. When possession is to be delivered by the sheriff, and there are several tenants, he must dispossess all of them. *Run. Eject.* 84, 85. Besides, how can the act of limitations ever bar if such possession is not the possession of the wrong doer in exclusion of the rightful owner? Here the plaintiff in error claimed under those who had been in possession by actual enclosure, to the exclusion of *Buchanan,* and those claiming under him, ever since the year 1784. An actual possession is necessary to make a deed effectual. 2 *Blk. Com.* 311. 314. 339. And an actual entry must be made on the

land to avoid an adversary possession. *Mason vs. Smallwood, (4 Harr. & M'Hen. 484)* and *M'Keel vs. Woolford, (4 Harr. & M'Hen. 495.)*

2. On the *bill of exceptions,* they cited *Cowper* 217.

3. They also objected to the *verdict* and *judgment,* and contended that the verdict was void for uncertainty. That the declaration in ejectment was for land by name and quantity, and not for land by description setting out the courses and distances. The plaintiff below located his pretensions on the plots in three different ways, and the jury, by their verdict, find generally for the plaintiff, without specifying which of the plaintiff's locations they adopted. The plots making a part of the pleadings, are to designate the extent of the plaintiff's claim, which the defence, if upon warrant, renders necessary. If the defence had been general, there would have been no occasion for locating the lands. There being therefore more than one location by the plaintiff below, of his claim and pretensions on the plots, and the verdict being general, no writ of possession can issue so as to deliver possession of the land under the judgment, which must be according to the verdict with reference to the plots. In the case of a general defence, and a general verdict for the plaintiff, the judgment is according to the declaration alone; and in that case there would be no difficulty in delivering the possession. The judgment must be so certain, that it may be pleaded in bar; and if a judgment is for more land than the plaintiff claims, it is fatal.

*Martin,* (Attorney General,) and *Shaaff,* contra. 1. On the *first exception.* An entry into part of a tract of land, is an entry into the whole—*Co. Litt.* 252. *b.* A seisin of parcel is a sufficient seisin in law for the whole. *Co. Litt.* 153. And where two are in possession, the law will adjudge him in possession who hath right to have the possession. *Co. Litt.* 368. *a.* 2 *Blk. Com.* 332. 336. 375. As to what constitutes a disseisin, they cited also 1 *Burr.* 107, 123.

2. On the *second exception,* they contended that it was constantly the practice to produce feoffments in

evidence on trials of ejectments, which, with twenty years possession, were always considered as evidence of livery of seisin. The practice in England is different from ours; because, by the statute requiring the recording of deeds of bargain and sale, they must be enrolled on parchment; and in the trial of ejectments in England, the original wills must be produced in evidence. In neither case is the practice so in this state. The enrolment of a deed may be either by common law, or according to the statute; and if the enrolment be at common law, it is for safe keeping, and may be read to the jury not as conclusive, but as presumptive evidence. The clerk is bound by his oath to record the deed, and he is not to judge whether it is an instrument which the law requires to be enrolled.

Upon the effect of the enrolment of deeds, and how far they are evidence, &c. they cited 15 *Vin. Ab.* 445, 444, *pl.* 2. 446, *pl.* 10. 2 *Lilly's P. R.* 69, 54. 2 *Vern.* 471. 1 *Ld. Ray.* 746. *Gilb. L. E.* 99. 100. *Bull. N. P.* 255. *Style* 445. *Loft's Rep.* 766, and the act of assembly 1785, *ch.* 46, *s.* 2.

3. As to the *declaration, verdict* and *judgment,* they said, it seemed to be admitted that the declaration was good; and as the judgment is according to the declaration, it must of course be a good judgment. The form is according to the British precedents. The defence of not guilty goes to the whole, and the verdict goes to the whole. Lands do not pass by course and distance. Possession can be given in England under a similar judgment. If therefore the declaration is good, and the judgment is according to the declaration, it must be good.

THE COURT OF APPEALS, [ *(a) Mackall, Jones, Potts and Dennis, J.*] gave the following opinion:

The *first bill of exceptions* in this cause presents two questions for decision.

*First.* If *James Bosley,* who is stated to have been in the possession of the land called *Hill's Forest,* at the execution of his deed to *George Buchanan,* and

(a) *Rumsey, Ch. J.* owing to indisposition, did not attend.

*George Buchanan* having the same possession of the land conveyed by *James Bosley* to him, had, in construction of law, at the execution of their several deeds, such a possession of the whole, as entitled them to convey the same by deed of bargain and sale, notwithstanding the possession of *Walter Tolly*, by enclosures, during those periods, as stated in the same bill of exceptions? and

*Secondly.* If under such circumstances, the deeds of bargain and sale by them could operate to convey the whole of the tract to which they were entitled, whether the operation of those deeds, or either of them, could be restricted or controled by any evidence appearing in the record extrinsic of the deeds?

Upon these questions this court concur with the General Court, and affirm the judgment expressed in that bill of exceptions.

The *second bill of exceptions* offers this question:

Whether the evidence given on the part of the plaintiff below, presented such a ground as justified the direction of the court to the jury, that they might and ought to presume that a deed good and operative in law to convey the said land called *Hill's Forest*, was executed, and did pass the said land in fee from the said *Henry Hill*, the son of the original patentee, to *Joseph Hill* his son, although they should find the several facts stated by the defendant to be true?

Upon adverting to the record it appears to this court, that a part of the evidence offered to the jury to prove the statement on which they were to ground the presumption of a good and operative deed from the said *Henry Hill* to *Joseph Hill*, was not admissible by law to be read to the jury, to wit: the deed from *Benjamin Ogle* and *Henry Margaret* his wife, to *James Bosley*, inasmuch as the same deed purports to have been executed by *Benjamin Ogle* and wife, of *Anne-Arundel* county, and is acknowledged before two justices of the peace of *Prince-George's* county, and from thence certified and transmitted to and recorded in *Baltimore* county, where the land lies.

MAY 1800

Gittings
vs.
Hall.

It was competent to *James Gittings's Lessee*, at the trial, to have proved to the jury, that *Benjamin Ogle* and his wife, although stated in the deed to be of *Anne-Arundel* county, were residents of *Prince-George's* county, if that had been the fact. Having omitted to do that, and that fact making no part of the case stated in the bill of exceptions, the court cannot go out of the record for evidence of that fact, or in any manner supply the omission. The court are therefore of opinion, that the direction given was erroneous, because it appears that inadmissible evidence was read to the jury to support an important part of the statement, on which they were to ground the presumption of a deed from *Henry Hill* to *Joseph Hill*, which part of the statement, if struck out, does not leave such a case as will justify the judgment given in favour of the plaintiff in ejectment. The court therefore disagree with the general court in the direction stated in the second bill of exceptions to have been given, and reverse the judgment of the general court on that bill of exceptions.

In the record another objection presents itself to the judgment rendered in the general court. The uncertainty of the verdict found; that verdict not ascertaining, with sufficient precision, the location of the plaintiff's claim, and the particular land for which the jury find for the plaintiff.

The plaintiff hath made two locations of his pretensions; the jury do not say which of those locations they find to be the true location of the land; both of them cannot be right. The judgment of the court does not ascertain it, and this court can see nothing in the record to direct the general court, or this court, in giving their judgment that certainty required in judgments.

Much has been said respecting the exemplification of the deed from *Henry Hill* to *Joseph Hill* in 1737, offered in evidence by the plaintiff in ejectment, at the trial in the general court: That exemplification, having been rejected by the general court, and that rejection acquiesced in by the plaintiff there, it makes

MAY 1800
Gittings
vs.
Hall.

no part of the record before this court, and can only be considered as an abstract proposition, not in the cause at all, and on which this court can judicially give no opinion.

As to the *third bill of exceptions,* this court concur with the general court, and affirm their judgment on that bill of exceptions.

JUDGMENT of the General Court *reversed,* and *procedendo* awarded.