LONGWORTH (RAYMOND v.). See Case No. 11,595.

LONGWORTH (BANK OF THE UNITED STATES v.). See Case No. 923.

## Case No. 8,489.
### LONGWORTH v. CLOSE.
[1 McLean, 282.] [1]

Circuit Court, D. Indiana. May Term, 1837.

DEED — UNRECORDED FOR TWENTY-SIX YEARS— CERTIFIED COPY — SUSPICION OF FRAUD —DEED TO SON — NO ACTS OF OWNERSHIP — ADVERSE POSSESSION.

1. A deed which purports to have been executed in 1809, but not recorded until 1835, is not recorded within the act of Indiana, which makes a duly certified copy evidence.

2. A deed thus executed and recorded by the order of a father to his infant son, must excite suspicion, and needs explanation. The explanations which are attempted in this case rather go to strengthen than remove the suspicions which arise from the facts.

3. The father remaining in possession of the premises for more than twenty-five years, and having surrendered the deed to his son and procured a deed to himself, is not guilty of fraud, so as to set aside the deed thus procured.

4. The deed from Kemper to the son was not recorded until after the decease of the father, and it is probable the son had no knowledge of the existence of the deed until after that event. The son, though living with the father, appears at no time to have exercised any acts of ownership over the farm. The possession of the father must be considered adverse to the son, and the son is bound by the statute of limitations.

5. The son acquired no title under the deed to him from Kemper.

6. But if the deed from Kemper to the son were good, still the deed from the son to the lessor of the plaintiff is inoperative, as it is proved there was an adverse possession of the premises, at the time it was executed.

Mr. Caswell, for plaintiff.
Mr. Dunn, for defendants.

HOLMAN, District Judge. The plaintiff in support of his claim to the lands in controversy, offered in evidence the copy of the record of a deed from Elnathan Kemper, to David B. Close, dated March 27th, 1809, and acknowledged the same day before a justice of the peace of the state of Ohio, but whose official character is not certified until May 5th, 1835. The deed was recorded the 11th of May, 1835. The defendants [Elizabeth Close and others] objected to the admission of the copy in evidence, unless the absence of the original was accounted for. The court, however, permitted the copy to be read, reserving the question, until the whole of the evidence was given. The plaintiff also offered in evidence a deed from David

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

B. Close, to Nicholas Longworth, plaintiff's lessor, dated March 20, 1833, which had not been recorded. He proved by Daniel J. Caswell, that the grantor and the subscribing witnesses were not residents of this state, and claimed the right of proving their hand-writing as proof of the execution of the deed, to which the defendants objected, but the objection was overruled by the court. The hand-writing of the grantor and of the subscribing witnesses was proved and the deed was read in evidence. The defendants gave in evidence a deed from the said Elnathan Kemper, to David Close, the father of David B. Close, for the same land, dated Sept. 29th, 1821, and recorded the 3d of October following. The substance of the parol evidence as testified by Samuel Jelly and John Craft, is, that David Close, the father, was residing on the land, and had made some improvement, when the witness Jelly first came to the country in 1812. That he stated to the witnesses at different times, that he had purchased the land of Kemper, with his own money, and for his own use in 1809, but took a deed in the name of his son, David B. Close, who at that time was an infant residing in the state of Connecticut, that the reason he gave why he took the deed in his son's name was because that after the death of his first wife, he had married a woman in Pennsylvania, who had children by a former husband, that he had left this wife, and had come to this state, that he paid for the land with money or property he had obtained by this wife, and fearing his wife or her heirs might claim the land, he took the deed in his son's name. That he kept possession of the deed and never had it recorded. That after the death of this wife he delivered up the deed to Kemper in 1821, and took the deed from Kemper in his own name, giving Kemper a writing on the back of the deed thus given up, to indemnify him against the claim of D. B. Close. That David Close married a third wife, by whom he had children. That David B. Close lived with his father on the premises in 1818, that his father became displeased with him and sent him away. That David Close continued to reside on the premises and use them as his own until his death, which took place in 1832. That his wife and family still continued in possession. That he made a will devising the premises, which by mistake was not produced. That David B. Close, in conversation with the witness Craft, after the death of his father, relative to this and other lands purchased by his father in his name, stated that it was not his money but his father's that paid for the land.

In deciding on this case I find it necessary to review the questions that were presented during the trial. On the subject of proving the execution of the deed from D. B. Close to Longworth, by other than subscribing witnesses, when those witnesses are not residents of the state, my opinion remains unaltered. Although the decisions on this subject are not uniform. But such has been the decision of the supreme court of this state, and I think that decision correct. But the propriety of admitting a copy of the deed from Kemper to D. B. Close, presents a different and a very complicated question. I have become satisfied that when the original deed is presumed to be in the possession of the party who offers the copy in evidence, the copy is inadmissible, unless the absence of the original is accounted for. On this point however the decisions are contradictory. In New York, Virginia, Kentucky and Tennessee, it has been decided, that when the law requires the deed to be recorded, and the record shews a compliance with all the legal pre-requisites, a copy of the deed recorded, regularly certified, is admissible evidence without any inquiry as to the original, and in some cases it has been decided that it is received equally with the original. Jackson v. Hopkins, 18 Johns. 487; Baker v. Preston, Gilmer, 285; Tebbs v. White, 4 Bibb. 42; Strode v. Churchill, 2 Litt. [Ky.] 76; Lannum v. Brooks, Hayw. [Tenn.] 121; Smith v. Martin, 2 Overt. 208. In Pennsylvania, North Carolina, Connecticut, and in the supreme court of the United States, a copy of a recorded deed is not to be received as evidence without accounting for the non-production of the original. Scott v. Leather, 3 Yeates, 184; Yarborough v. Beard, 1 Tayl. 25; Nicholson v. Hilliard, 1 Car. L. Repos. 253; Cunningham v. Tracy, 1 Conn. 252; Riggs v. Taylor, 9 Wheat. [22 U. S.] 483; Brooks v. Marbury, 11 Wheat. [24 U. S.] 78. In South Carolina there are statutory provisions respecting the admission of such copies in evidence, and independently of these provisions, the decisions support the principle contained in the last named cases. See Purvis v. Robinson, 1 Bay, 493; Dingle v. Bowman, 1 McCord, 177. In Maryland the case of Carroll v. Llewellin, 1 Har. & McH. 162, seems to be in accordance with the first class of decisions. But in that case some stress seems to have been laid on the fact, that possession of the land had been given with the deed. And Chief Justice Marshall in Brooks v. Marbury [supra], doubts the uniformity of the decisions in Maryland in favor of receiving the copy when no account is given of the original. And in Gittings' Lessee v. Hall, 1 Har. & J. 14, it was decided that the deed itself must be produced unless it was lost. Dorsey v. Gassaway, 2 Har. & J. 407, supports the same principle.

Taking all these cases together and the principles on which they were decided, and I am clearly of opinion that both reason and authority are in favor of rejecting the copy when the party producing it is presumed to be in possession of the original and does not account for the non-production of it. But if the party is not presumed to be in possession

of the original, a regularly certified copy of a recorded deed is admissible in evidence, without accounting for the absence of the original. It has been decided in Tennessee, that when a deed contains a general warranty, the title papers are presumed to be in the hands of the warrantor and the warrantee is not bound to produce them in evidence. Cook's Lessee v. Hunter, 2 Overt. 113. But here the deed, from D. B. Close to Longworth, not being with general warranty, does not come within the terms of this case. I see no reason that excuses the plaintiff from producing the original deed or accounting for its non-production. But even if the copy of a regularly recorded deed were admissible in evidence, without accounting for the non-production of the original, the circumstances of this deed as they appear from the copy offered in evidence, independently of the parol evidence, are such as to excite suspicions strong enough to render the copy inadmissible. In the language of Talbert v. Stinson, 1 Pet. [26 U. S.] 188, the acknowledgment of a deed is merely for the purpose of having it recorded, and it is not conclusive on the opposite party. It is ex parte and consequently only prima facie evidence where every thing appears to be regular and legal, and the party to be affected by it may question its validity. See, also, Jackson v. Schoonmaker, 4 Johns. 164; Pidge v. Tyler, 4 Mass. 541. And a copy of a recorded deed cannot be admitted as evidence unless all the formalities and legal requisites have been complied with. Horton v. Hagler's Ex'r, 1 Ruff. [Hawks] 48; Miller's Lessee v. Holt, 1 Overt. 111; Vickroy v. M'Knight, 4 Bin. 209. And a deed acknowledged but not recorded cannot be received in evidence without proof of its execution. Jackson v. Shepard, 2 Johns. 77.

In the case before the court, the deed was executed the 27th of March, 1809, and acknowledged on the same day, but it was not recorded until the 5th of May, 1835. Nor until this time was it proffered for being recorded, the official character of the justice of the peace of the state of Ohio, who took the acknowledgment, nor being certified, presenting a lapse of more than twenty-six years after the execution of the deed before it was recorded. So great a length of time between the execution of the deed and the recording of it, without any explanatory circumstances, exhibits such a gross irregularity, such a departure from one of the requisites of the statute of this state, as to show conclusively that this was not a regularly recorded deed. In the case of Harvey v. Alexander, 1 Rand. [Va.] 219, it was decided that a deed not lodged to be recorded until eight months after its date, and not proved by the witnesses on whose testimony it was recorded, to have been sealed and delivered within eight months before it was recorded, is not good as a recorded deed.

Without subscribing to the doctrine of this case in its whole extent as exactly applicable to the case before the court, I feel warranted in the conclusion, that if a deed is not recorded until so great a length of time after it purports to have been executed, as precludes the party to be affected by it, from every reasonable opportunity of detecting any fraud, imposition or forgery, that may have been practised in the case, that the deed cannot be considered as a regularly recorded deed so as to authorize the reading of a copy of it in evidence. So much suspicion would attach itself to the deed, that nothing but the instrument itself should be received. But the copy of this deed is before the court with explanatory circumstances. I presume this is the deed that was taken by David Close of Nathaniel Kemper, in the name of David B. Close, and which David Close afterwards delivered up to Kemper with a writing on the back of it to indemnify Kemper against the claim of D. B. Close. That D. B. Close was then an infant in the state of Connecticut and knew nothing of the transaction. If D. B. Close was in existence when the deed was executed, he had been of age more than five years before the deed was recorded; but the testimony will warrant the supposition that he was two or three years of age, at least, when the deed was executed—and that seven, eight, or more years had passed after he was of age before the deed was recorded. These circumstances, taken in connection with the fact that the deed was not recorded until several years after the decease of David Close, and altogether they give this deed a more suspicious aspect than if the copy was before us without any explanatory circumstances. I am therefore of opinion that the copy of this deed cannot be considered as any part of the evidence in this case.

Leaving this deed out of the case, there is no evidence that David B. Close was entitled to the premises in controversy — consequently the title of the plaintiff must fail, unless, as was suggested in argument, that David B. Close inherited an interest in the premises as one of the heirs of his father, and that the plaintiff was entitled to recover to the extent of that interest. This position was incidentally assumed by the plaintiff's counsel. It appeared to be the thought of the moment, arising out of the absence of the will of David Close. It was not a feature of the case to which the attention of the court or of the witnesses was directed. It is true the witnesses spoke of the children of David Close, yet I do not consider that there is any testimony before the court as to the number of heirs that are entitled to inherit his estate; or that David B. Close, as one of the heirs, has shown his claim to any specific portion of the lands of his ancestor. But if I have mistaken the law in rejecting the copy of this deed, I have done the plaintiff no injury. For if this deed is considered a part of the testimony in this case, there is not then such a case presented as entitles the plaintiff to recover.

These questions would arise out of the facts

in the case:—First. Did David B. Close acquire a legal title to the premises by virtue of the deed made by Kemper, in 1809? Secondly. If he did, had he or his assignee, at the time this suit was instituted, an existing right of entry, so as to maintain an action of ejectment? Thirdly. Was his conveyance to Longworth operative at law, so as to constitute a legal transfer of his title? If either of these questions are answered in the negative, it defeats the plaintiff's right of action; and although they are involved in some intricacy, it is my opinion that each of them must be answered in the negative.

In the first place, David B. Close acquired no title by virtue of the deed from Kemper. Laying out of view the question of fraud, that I will presently look into, this position seems to be incontrovertible. When a man purchases lands with his own money, and takes the deed in the name of another, the general rule in equity is, that the grantee takes the title in trust for the purchaser. Gascoigne v. Thwing, 1 Vern. 366; Lloyd v. Spillet, 2 Atk. 148; Smith v. Baker, 1 Atk. 385; Walley v. Walley, 1 Vern. 484; 2 Fonbl. Eq. 117. But if a father purchases and takes a deed in the name of his son, unadvanced, it is presumed to be an advancement for the son, and not a trust, except the father acts as proprietor, or does any thing that implies him to be the owner of the land, this shall overrule the presumption of the law. 2 Fonbl. Eq. 121, 122; Loyd v. Read, 1 P. Wms. 608; Finch v. Finch, 15 Ves. 43. In this case the conduct of the father shows conclusively that he did not intend this land as an advancement for his son. He took possession of it, improved it, and used it as his own, and never recognized his son as having any interest in it. Holding up the deed, and not having it recorded, and afterwards delivering it up to the grantor and taking a deed in his own name.

But it is contended that the son received the legal title to the land by virtue of the first deed from Kemper, of which he could not be divested by the act of the father. It is true, on general principles of law, that a title is not divested by the destruction of the deed that conveyed the title, and that a voluntary deed once perfected cannot be revoked at the pleasure of the maker; but these principles in their application are subject to various modifications, and are not conclusively applicable, to any case, except the title is in all respects complete. In this case the title of the son was not complete. No man can make another a grantee, without his consent; and a deed though recorded is null and void if it is not afterwards accepted by the grantee. Harrison v. Trustees of Phillips Academy, 12 Mass. 456. Here, then, is no evidence that D. B. Close knew of the existence of the deed until after the death of his father, twelve years after the deed had been given up, and another taken for the same land in his father's name. In the case of Maynard v. Maynard, 10 Mass. 456, the father made a deed to his son, which was acknowledged, and recorded, and delivered to a third person to be kept until called for. The father afterwards called for it, and cancelled it: no estate passed to the son, although he had concurrent possession of the land with his father. In Stinson's Lessee v. Russell, 2 Overt. 40, a deed was executed, but before it was registered, the grantee destroyed it, and at his request the grantor conveyed the land to a third person, it was held that the first grantee had no title to the land after the second deed was executed.

These cases, and many others of a similar import, induce me to believe that D. B. Close had no title to the premises, even as trustee, after the execution of the deed to his father. For no court, either of law or equity, will enlarge the rules of construction, so as to favor a trustee who has no beneficial interest, in setting up a title to the prejudice of his cestui que trust.

But it is suggested in the argument, that David Close took the deed from Kemper in the name of his son, with intent to defraud his second wife or her heirs; and that he cannot now allege his own fraud in order to destroy his son's title. I do not think there is anything in this that affects the father's title. The nature of the claim that this wife or her children had against David Close does not appear, and I am not prepared to say that an act that is done to defeat an imaginary claim, will be so affected with fraud as to change its legal or equitable character. A deed made to defraud creditors, cannot be set aside if there are no debts founded on a legal, subsisting consideration. Alexander v. Gould, 1 Mass. 165; Taylor v. Eubanks, 3 A. K. Marsh. 243. But it is not the father that is here alleging his own fraud, in order to set up his own deed, and destroy his son's title. How the case would have stood between the father and the son, if the son had received the deed from Kemper, before it was given up, and no other deed had been given, and the father had now come into a court of equity as cestui que trust to enforce his claim against his son, as trustee, need not now be inquired into. In that case it might have been said with more propriety, that the question of fraud was applicable. But the father having kept the first deed in his own power, in such a way, and for so long a time, that if his design was fraudulent, was well calculated to defeat that design, and then having taken a deed in his own name, it is not now with the son, after such a lapse of time, to urge this indefinite fraud of his father, in order to revive his own dormant title, and defeat the deed of his father, which had been on record thirteen or fourteen years before he set up his claim, and to disturb a possession which has been uninterrupted for more than five and twenty years.

Secondly. If David B. Close acquired a title to the land by virtue of the first deed from Kemper, I am inclined to think that neither he

nor his assignee had a right to enter on the premises at the time this suit was instituted, in November, 1833, because David Close and those claiming under him had been in adverse possession of the premises more than twenty years. There can be but little doubt about the length of time of the father's possession. It is in proof that he was in possession, and had improved the premises in 1812. The presumption is, he took actual possession as soon as he made the purchase, in 1809. His possession continued until his death, since which time his widow and family had retained the possession, being nearly twenty-five years before this action was commenced. But was the father's possession adverse to the title of the son? The question as to what constitutes an adverse possession, is perplexed by many conflicting decisions, which it is difficult to reconcile. In this case, it is evident that the father purchased the land for himself, and held possession of it in his own right, and never recognized his son as having any right to disturb his possession. And from the principles established by the supreme court of the United States, in the case of Boon v. Chiles, 10 Pet. [35 U. S.] 177, I am inclined to believe that the father held the possession adverse to the title of the son, from the beginning, and that the plaintiff's right of entry was barred by the act of limitations, before this suit was instituted. But the act of limitations which bars an ejectment after twenty years adverse possession, has a saving in favor of infants, until five years after their disabilities are removed. And D. B. Close was an infant when his title accrued. The age of D. B. Close is not given, and from the testimony it is barely possible that he was within the saving of the act of assembly. If he was one year and a half old when the deed in his name was executed, more than five years elapsed after he came of age before this suit was commenced; but from the facts in the case, the presumption is, he was more than two years of age when the deed was executed, and consequently, his case is not within the saving of the act of assembly. It lay on the plaintiff to rebut this presumption, and to show that D. B. Close, and those claiming under him, were within the saving of the act of limitation. This has not been done, and the saving of the statute will not avail the plaintiff.

It is further urged that statutes of limitation do not operate as between trustee and cestui que trust. All the cases I have seen where this principle has been applied, are where the trustee has attempted to set up the statute in bar of the equity of the cestui que trust, and even then the statute runs after the trust is disclaimed. See the above case of Boon v. Chiles. But a contrary principle prevails in favor of a cestui que trust against his trustee. A long, uninterrupted possession in the cestui que trust weakens even the legal title of the trustee, and a conveyance to the cestui que trust is presumed.

Another position was taken by the plaintiff's counsel in the argument, of this part of the case. That David B. Close was in possession of the land, while he lived with his father in 1818, and that it was not until after that time that the act of limitations began to run. But certainly this ground is not tenable. There was nothing in the fact of the son's living with the father at that time, that in any way interrupted the father's possession. No intimation whatever is given that the son pretended any claim to the premises, or exercised any ownership over them. Thus, whatever view is taken of this part of the case, it seems clear, that the plaintiff's right of action is barred by the statute of limitations.

The third question remains to be considered. If David B. Close acquired a legal title to the premises by virtue of the first deed from Kemper, and his claim was not barred by the statute of limitations, was his conveyance to Longworth operative in law so as to constitute a legal transfer of his title? This deed bears date the 20th of March, 1833; at that time the widow and younger children of David Close, were in possession of the premises, by virtue of the seizure of David Close at the time of his death; and if the possession of David Close at the time of his death, was adverse to the title of David B. Close; that adverse possession continued when this deed was executed, and the deed was therefore void. Whatever doubts may have existed as to the character of the possession of David Close, prior to the time he received the deed from Kemper in his own name, there can be no doubt, but that after he received that deed, and had it recorded, he held the possession, as in his own right, adversely to all the world. And it has been decided in this state, and in many others, that a conveyance of land to a stranger to the possession when there is an adverse possession, is in law a nullity and conveys no title. See Fite v. Doe, 1 Black. [66 U. S.] 127; Hopkins v. Ward, 6 Munf. 38; See v. Greenlee, Id. 303; Swett v. Poor, 11 Mass. 549; Jackson v. Elston, 12 Johns. 452; Gibson v. Shearer, 1 Murph. 114.

Thus in every point of view in which the case can be considered, the plaintiff has shown no right to recover, even if the copy of the deed from Kemper to David B. Close had not been rejected. Judgment for the defendants.