## COURT OF APPEALS, JUNE TERM, 1820.

CARROLL, *et al.* lessee, *vs.* NORWOOD's heirs.

APPEAL from *Baltimore* county court. Ejectment for
two tracts of land, one called *Enlargement(a)*, the other
*Brown's Adventure*, lying in *Baltimore* county. The de-
claration contained *seven* separate demises, viz. by *Charles
Carroll*, of *Carrollton*, *Nicholas Carroll*, *Daniel Carroll*, of
*Duddington*, and *Robert Carter*, each for an undivided fifth
part, by *Abraham Van Bibber* for one undivided tenth part,
by *Isaac Van Bibber* for one undivided fiftieth part, and by
*William Smith* for four undivided fiftieth parts. Defence
was taken on warrant by the then defendants, *Edward* and
*Samuel Norwood*, for a tract called *The United Friendship*,
as located on the plots in this cause.

1. At the trial in the county court at *March* term 1807,
the plaintiff offered in evidence a certificate of survey and
grant of the tract called *The Enlargement*, containing one
hundred acres, surveyed for *John Israel* on the 10th of
January 1720, and granted to him on the 10th of July 1724.
And also offered the will of *John Israel*, dated the 13th of

*J. I. obtains a certificate of sur- vey, and pays the composition mo- ney, and devises the land contain- ed in the certifi- cate to his three sons. Himself and his sons, and those claiming under them, take & hold possession of the land from 1723 to a- bout 1797. Under such circumstanc- es, the legal pre- sumption is, that a grant for the land regularly issued, and this presump- tion will be made, tho' it appears that a grant actually is- sued to J. I. after his death, such grant being en- tirely void, and producing no ef- fect whatsoever J. L. I. being seized of part of a tract of land, ex- ecuted a bond of conveyance for it to J. H. in 1730, and at the same time put J. H. in possession. J H. assigned the bond to B. T. in 1745, and in*

*(a)*See 4 *Harr. & M'Hen.* 287.

1749 put B. T. in possession. In 1750 J. L. I executed a deed of the land included in the bond to B. T. This deed was not recorded until 1794, and then under a decree of the court of chancery. In 1760 J. L. I executed another deed for the same land to E. N. J H and those claiming under him, held possession from 1730, the date of the said bond, until 1800. Held, that the deed from J L I to B T could not operate as a feoffment for want of livery of seizin, nor as a release to enlarge the estate of the grantee, because the grantee had no legal estate, nor as a deed of bargain and sale, enrolled under the decree of the court of chancery, because it does not appear that E N had any notice of the exis- tence of such a deed in 1760, when the one to himself was executed.

It is the province of the courts to construe grants and deeds, as well in regard to the land intended to be transferred, as to the estate intended to be created, and in all cases except that of a latent ambi- guity, this construction must depend on the grants or deeds themselves, and not on matter *de hors*

Calls are first to be gratified; when there are none, resort is to be had to course and distance.

The line of a tract of land may as well be the subject of a call as a natural object.

Calls are preferred to course and distance, because it operates most beneficially for the grantee

The location of calls is to be decided by the jury

The 4th, 5th, 6th, and 7th lines of a tract of land, were stated by the grant to run as follows, viz. N 160 ps. then W 60 perches, *with a tract lately taken up by G T*, then W S W 200 perches, *with the said land*, then S 230 perches, *bounding on the said T's land*, &c Held, that said 5th, 6th and 7th lines, must run with and bind on the lines of G Y's land, and that the 4th line must be controled by the other lines, and terminate wherever the jury should find it would strike said Y's land, by either elongating or shortening it

A plaintiff in ejectment may recover less than he claims, but it must be of the same nature. If he declares for an undivided part, he may recover any smaller undivided part, or if he declares for an entirety, any smaller entirety, but he cannot recover an entirety if he declares for an undivided inte- rest, nor an undivided interest if he declares for an entirety

A plaintiff in ejectment must, at the time of instituting his suit, and at the trial of the cause, have a legal title to the land he sues for

June 1820. January 1723, whereby he devised the said land, with other lands, to his three sons *John Lacon, Gilbert Talbot,* and *Robert Israel,* and their heirs for ever, to be equally divided between them and their heirs. The will was proved the 11th of March 1723. He further gave in evidence a deed from *John Lacon Israel* to *Benjamin Tasker,* dated the 15th of June 1750, together with a decree of the chancellor thereon, passed the 18th of December 1794, directing said deed to be recorded, &c. This deed, after reciting that *J. L. Israel* had passed his bond to *John Hurd,* to convey to him, and his heirs, one hundred acres of land, part of the land devised to said *J. L. Israel* by his father *John Israel,* and that that bond was assigned to *Tasker* and company, proceeds to convey to *Tasker,* his heirs and assigns, said one hundred acres, being the residue and remainder of any or all the lands devised to the grantor by his said father, or which by any other way had come to him as his son, after 150 acres, previously conveyed to *George Buchanan,* were taken out; in trust that said *Tasker* should hold the same as to one fifth for *Daniel Dulany,* his heirs and assigns; one fifth for *Charles Carroll,* his heirs and assigns; one fifth for *Charles Carroll,* of *Daniel,* his heirs and assigns; one fifth for Doctor *Charles Carroll,* his heirs and assigns; and one fifth for said *Tasker,* his heirs and assigns. He also offered in evidence a deed from *J. L. Israel* to *George Buchanan,* dated the 7th of July 1731, for 150 acres of the easternmost part of *Yates his Forbearance,* and a deed from *Gilbert Talbot Israel,* and *Charles Ridgely,* to Doctor *Charles Carroll,* dated the 26th of June 1732, for his, *Israel's,* right, &c. to all lands devised to him by his father *John Israel.* Also a deed from *Robert Israel* to *Charles Carroll,* Esquire, dated the 26th of August 1743, for all his right, &c. to all lands devised to him by his father *John Israel;* in trust as to one fifth for *Tasker, Dulany, C, Carroll* of *Daniel,* Doctor *C. Carroll,* and the said *C. Carroll,* Esquire, respectively. Also a deed from Doctor *C. Carroll* to *B. Tasker, C. Carroll,* Esquire, *Daniel Dulany,* and *Daniel Carroll* of *Duddington,* dated the 25th of September 1733. And also gave in evidence, that the lessors of the plaintiff, and those under whom they claim, have at all times, since the date of the will of *John Israel,* until about ten years before the commencement of this action, been in the possession and enjoyment of the land

called *The Enlargement,* under the title derived from said will; and that that tract was truly located on the plots by the plaintiff, and was the land for which this action was brought. The defendants then offered in evidence the grant of the tract of land called *The Enlargement,* herein before mentioned, granted to *John Israel,* and proved that *Israel* was dead at the time said grant issued. They also offered in evidence a grant of a tract of land called *The United Friendship,* granted to *John Larkin* the 1st of September 1687, being a resurvey on *Larkin's Addition* and *Ludlow's Lot,* containing 700 acres; also various mesne conveyances from said *Larkin* for *The United Friendship,* down to the father of the defendants, and that said tract was correctly located by them on the plots; and that they, and those under whom they claimed, had, at all times, from the date of said grant, been in the possession and enjoyment of said land as located by them. They also gave in evidence a grant of a tract of land called *Brown's Adventure,* granted to *Thomas Brown* the 10th of November 1695, for 1000 acres. Also a grant of a tract called *Yates his Forbearance,* granted to *George Yates* the 20th of July 1694, for 770 acres *(a).* Also a grant of a tract called *Yates' Addition,* granted to *John Yates* the 10th of October 1707, for 87 acres. And then prayed the direction of the court to the jury, that the lessors of the plaintiff, nor any of them, had made title to the tract called *The Enlargement,* for which the action was brought, because the grant for said land was issued to *John Israel,* after his death.

The Court, [*Nicholson,* Ch. J. and *Hollingsworth,* A. J.] refused the prayer, and directed the jury, that said *Israel* acquired an equitable interest in the tract called *The Enlargement,* in virtue of his certificate of survey, which interest was transmissible by last will, and that as he had devised the same to his three sons, in fee, as tenants in common, and the plaintiff had deduced and shown a title from said devisees, by sundry mesne conveyances, they might and ought to presume, from the great length of time since the date of the certificate of survey, that a grant had issued to the sons of *Israel,* provided they found that the possession of the land had been held under that title. The defendants excepted.

*(a)* See the expressions in this grant set out in 1 *Harr. & Johns.* 128.

<div style="margin">JUNE 1820.

Carroll vs Norwood

Where there was a certificate of survey of land made in 1720, and a grant thereon in 1724, issued *after* the death of the grantee——*Held,* that the jury might and ought to presume a grant to the devisees, if possession of the land had been held under the said title</div>

June 1820.

Carroll
vs
Norwood

J. L. J. being seised of part of a tract of land, executed a bond of conveyance to J. H. in 1730, conditioned to convey the land to him, & at the same time delivered posses-sion to J. H. This bond was assigned by J. H. to B T in 1745, and pos-session delivered in 1749. In 1750 J L J executed a deed of the land to B T which deed was not recorded until 1794, when it was enrolled by a decree of the court of chancery. In 1760 J L J exe-cuted a deed to E N for the same land. Possession of the land was held by J H and those claiming un-der him, from 1730 until 1800— *Held,* that the deed from J L J to B T could not operate as a feoff-ment for want of livery of seisin. Nor as a release to enlarge the es-tate, for want of an estate in law in the releasee at the time of the execution of the deed Nor as a deed of bargain and sale. enrolled under the decree of the court of chancery, it not being stated that E N at the time he obtained his deed, had notice of the deed from J L J to B T

2. The plaintiff further offered in evidence a paper purporting to be a bond executed by *John L. Israel* to *John Hurd,* dated the 24th of December 1730, conditioned that he would, when required, make over, convey and transfer, by a lawful general conveyance, to said *Hurd,* his heirs, &c. 100 acres of land out of the tract called *Yates's For-bearance,* &c. And an assignment endorsed on said bond from said *Hurd* to *Benjamin Tasker,* and company, dated the 25th of February 1745; and proved the hand writing of *Richard Croxall,* thereto signed as a subscribing wit-ness, and that said *Croxall,* and *George Buchanan,* the other subscribing witness, were both dead. He also pro-duced a bond from said *Hurd* to said *Tasker* and compa-ny, dated the 26th of March 1747, reciting the above bond and assignment, and covenanting to deliver up to *Tasker* and company, possession of the said 100 acres, on the 10th of December 1749; and proved that *Richard Croxall,* whose name was thereto subscribed as a witness, was dead, and also proved his hand writing, and then offered to read the same in evidence. And further offered in evidence, that *Hurd,* and those under whom the plaintiff claims, were, from the year 1730 to the year 1800, in possession of the tract called *The Enlargement,* as located by the plaintiff. He also read in evidence the original deed from *John L. Israel* to *Tasker,* and others, dated the 15th of June 1750, and the decree of the chancellor thereto an-nexed. The defendants then offered in evidence a deed from *John L. Israel* to *Edward Norwood,* father of the defendants, dated the 28th of March 1760, conveying, among other lands, all his right and title in any tracts or parcels of land, devised to said *J. L. Israel* by his father's last will and testament, or which he had become entitled to as heir at law of his father. The plaintiff then prayed the direction of the court to the jury, that if the jury found the facts stated by the plaintiff to be true, that then he had made title in law to the estate and right of *J. L. Israel* in the land contained in his deed to *Tasker,* and others, of the 15th of June 1750, notwithstanding the deed or conveyance executed to the father of the defen-dants on the 28th of March 1760. The court gave the direction as prayed. The defendants excepted.

3. The plaintiff further offered in evidence certificates of surveys of the following tracts of land, viz. *Yates his Forbearance*, surveyed for *George Yates* the 20th of June 1683, for 770 acres *(a)*; *Yates's Forbearance*, surveyed for *George Yates* the 17th of July 1683, for 140 acres; *The Forest*, surveyed the 23d of March 1678; *Pierce's Encouragement*, surveyed the 15th of October 1677; *Foster's Fancy*, surveyed the 29th of June 1669; *Hockley*, surveyed the 8th of August 1670; *Larkin's Addition*, surveyed the 3d of November 1673; *Lloyd of Ludloe's Lot*, surveyed the 20th of October 1667; *The Ludloe's Lot*, surveyed the 20th of June 1668, and *The United Friendship*; which last mentioned tract was surveyed for *John Larkin* on the 15th of October 1684; the certificate stated it as beginning at a red oak standing on a high point by a small gut on the N side of *Patapsco* river in *Baltimore* county, about a mile below the falls, and running (1) down the river E 160 ps. to another bounded oak, then (2) running N into the woods 200 ps. then (3) W 100 ps. then (4) N 160 ps. then (5) running W 60 ps. with a tract of land lately taken up for *George Yates* of *Anne Arundel* county, gent. *(a)*, then (6) running W S W 200 ps. with the said land, then (7) running S 230 ps. bounding on the said *Yates's* land, then (8) S W 44 ps. to the aforesaid river, then (9) running down the river S and by W 28 ps. (10) S 38 ps. then (11) running S S E 90 ps. then (12) running E S E 20 ps. lastly (13) running E N E 200 ps. to the first bound tree, containing in all 700 acres of land." He also gave in evidence the grant of a tract of land called *United Friendship*, surveyed for *Edward Norwood* on the 23d of September 1765, under a warrant to resurvey the following tracts, viz. 505 acres, part of *The United Friendship*, granted to *John Larkin* for 700 acres, the 1st of September 1687; *Addition to Yates's Forbearance*, granted to *Emanuel Teal* the 13th of June 1734, for 54 acres; *Yates's Forbearance*, granted to *George Yates* the 20th of July 1684, for 140 acres; and *The Addition to United Friendship*, granted to *Edward Norwood* the 29th of September 1750, for 30 acres—"Beginning, for *Edward Norwood's* part of *United Friendship*, at the place where formerly stood a bounded red oak on the N. side of *Patapsco* river, it being the beginning of the whole tract called *United Friendship*, and running

*(a)* See this grant set out in 1 *Harr and Johns.* 128.

June 1820.

Carroll
vs
Norwood

The courts are to decide on the construction of grants and deeds, subject only to the exception of the case of a latent ambiguity In construing grants, the courts are to regard and to be governed by, the intention of the parties, to be collected from the deed, if not incompatible with some rule or principle of law, and nothing extrinsic or *de hors* the deed, is to be recurred to for ascertaining such intention, unless in the case of a latent ambiguity. If there is a call in the grant, and course and distance, and they do not agree, the call is to be gratified. The jury are to ascertain and fix calls. There is no distinction between a line of a tract of land called for, and any natural or artificial boundary. The 4th, 5th, 6th, and 7th lines of a tract of land, were expressed in the grant to run as follow, viz "Then N 160 ps. then running W 60 ps with a tract of land lately taken up by *G Y*, then running W S W 200 ps with the said land, then running S 230 ps bounding on the said *Y's* land," &c—Held, that the 5th, 6th, and 7th lines must run with and bind on the lines of the land of *G Y*, & that the 4th line must be controled by the 5th, 6th, and 7th lines, and terminate on the line of *Y's* land, where ver the jury may find it will strike the same by elongating or shortening the 4th line

JUNE 1820. thence (1) N 13 W 335 ps. (2) E N E 80 ps. to the end of the fifth line of the whole tract, it being also at the end of the W 100 ps. line of a tract of land called *Yates's Forbearance,* then (3) bounding on *Yates's Forbearance,* and the whole tract called *United Friendship,* N 160 ps. (4) W S W 200 ps. (5) N 70 ps. thence (6) S W 44 ps. to the main falls of *Patapsco* river, but the true distance is 530 ps. to said falls, then (7) running down the said river S by W 28 ps." &c.    He also offered in evidence two deeds, one from *John Larkin* to *William Chew,* dated the 25th of June 1702, for 350 acres, part of *The United Friendship,* and the other from *Hyde Hoxton* to *Edward Norwood,* dated the 14th of May, 1750.

Carroll
vs
Norwood

And also gave in evidence, that all the said certificates of surveys, and the said grant and deeds, were by him truly located on the plots. The defendants then offered evidence, that said grant and certificate of survey of *The United Friendship,* and the certificates of the two tracts called *Yates's Forbearance,* were by them truly located; and then prayed the court to direct the jury, that the fifth, sixth, and seventh lines of *The United Friendship,* must run with and bind on the lines of the land of *George Yates,* mentioned in the said grant and certificate of *The United Friendship,* wherever the jury shall find them to be. But the court refused to give such direction, being of opinion that the location of the tract called *The United Friendship* would bear a double aspect, and that what was its true location was a matter properly to be enquired of and found by the jury *(a)*. The defendants excepted. Verdict and judgment for the plaintiff for the tract called *The Enlargement,* according to the plaintiff's location of the same, by a table of courses distinguished on the plots by the number one, beginning at the red letter E. On this judgment the defendants sued out a writ of error returnable to this court, where the cause was argued at *December Term* 1812, before CHASE, Ch. J. BUCHANAN and EARLE, J.

---

*(a)* This decision seems to be conformable to that made by the general court, and affirmed in the court of appeals, in the case of *Ridgely et ux Lessee, vs. Norwood* (1 *Harr & Johns.* 128,) on the very same grant; if that case was referred to in the court below, it was not cited or referred to by the counsel who argued this case in the court of appeals, nor by that court when they made their decision reversing the judgment of the court below.

*T. Buchanan, Shaaff* and *Pinkney*, for the plaintiffs in error. They cited *Carroll et al. Lessee vs. Norwood,* 4 *Harr. & MᶜHen.* 287. *Savory's Lessee vs. Whayland,* 1 *Harr. & MᶜHen.* 206. The act of 1785, *ch.* 72, *s.* 11. *Doe on Dem. Bowerman vs. Sybourne,* 7 *T. R.* 2. *Goodtitle Dem. Jones vs. Jones, ibid* 43. *Peake's Evid.* 316, 317. *Keen Dem. The Earl of Portsmouth et al. vs. The Earl of Effingham,* 2 *Strange,* 1267. *Warren Dem. Webb vs. Greenville, Ibid* 1129. *Helm's Lessee vs. Howard,* 2 *Harr. & MᶜHen.* 82. *Dorsey's Lessee vs. Hammond,* 1 *Harr. & Johns.* 190, 194. *Cheney vs. Ringgold's Lessee,* in this court, *December Term* 1807. 2 *Blk. Com.* 339, and *Land Hold. Ass.* 288.

<div style="text-align:right"></div>

*Harper* and *Martin,* for the defendants in error, relied on *Gittings Lessee vs. Hall,* 1 *Harr. & Johns.* 16, 22. *Thompson et al. Lessee vs. Brown,* 1 *Harr. & Johns.* 335. *Gibson's Lessee vs. Smith,* 1 *Harr. & Johns.* 253. *Davis et al. Lessee vs. Batty, Ibid.* 264. *and England Dem. Syburn vs. Slade,* 4 *T. R.* 682.

CHASE, Ch. J. delivered the opinion of the court. It has been conceded in the argument, that the facts and circumstances stated in the *first bill of exceptions,* constitute a sufficient foundation for the jury's presuming a grant to the sons of *John Israel,* independent and exclusive of the fact, that a grant had issued to *John Israel,* the father, after his death, which fact, it has been contended, repels and precludes the presumption, on the ground that all the facts and circumstances originated from that source, and are in such manner to be accounted for. The grant which issued to *John Israel* was void *ab initio,* there being no grantee, *John Israel* being dead. The grant had no operation or efficacy in law, and consequently no estate or interest was or could be acquired under it. It was a mere nullity, and none of the facts or circumstances in the case could spring from it. There is a plain distinction between a void grant or conveyance and a defective deed, and on that ground the case of *Keen, on the demise of the Earl of Portsmouth et. al. vs. The Earl of Effingham,* 2 *Strange,* 1267, is distinguishable from the present. A void grant is no grant, and proves nothing. A defective conveyance may be good for some purposes, and legally inefficacious for others. In the case in *Strange,* although deeds were

June 1820.

Carroll
vs
Norwood

made and enrolled for the purpose of making a tenant to the *præcipe*, yet proper parties did not join; that is, the person who had the life estate did not join in them. The uses declared were warranted and well created. The deeds were effectual for the purpose of declaring the uses of the recoveries, and they were also made for the purpose of making proper parties. These deeds were part of the recoveries and the foundation of them, and supposed to be effectual; but the tenant for life not joining in them, they were defective; and if the court had directed the jury to presume proper deeds, the direction would have been repugnant to the deeds appearing, and would also have concluded the interest of the tenant for life. In the case in question no grant exists. *John Israel,* the father, in virtue of his certificate of survey, and payment of the composition money, acquired an equitable interest in the tract of land called *The Enlargement,* which by his will was transmitted to his three sons. It is stated, in the case, that the lessors of the plaintiff, and those under whom they claim, have been in possession of *The Enlargement* ever since the date of the will of *John Israel,* (13th of January 1723,) under the *title* derived from the *said will.* Every fact in the case, on which the direction to the jury was prayed, existed independent of the void grant which issued to *John Israel,* and at the time it did issue the three sons were entitled to it, and not *John Israel,* who was dead. Here then is a clear equitable title shown in the sons of *John Israel,* and deduced from them to the lessors of the plaintiff, and a possession held in conformity thereto from 1723, until within ten years before the institution of this ejectment. The court are of opinion, that the opinion expressed by the court below, in the *first bill of exceptions,* be affirmed.

It does not appear by the facts stated in the *second bill of exceptions* that there is any evidence of a title deduced to the lessors of the plaintiff in the land in question. The deed from *John L. Israel* to *Tasker* cannot operate as a feoffment, for want of finding livery of seizin. It cannot operate as a release to enlarge the estate, for want of an estate in law in the releasee at the time of the execution of the said deed. It cannot operate as a deed of bargain and sale, enrolled under the decree of the court of chancery, the case not stating that *Edward Norwood,* the father of

the defendants, at the time he obtained his deed, had no-
tice of the deed from *John L. Israel* to *B. Tasker.* The court are of opinion, that the opinion expressed by the court below, in the *second bill of exceptions*, be reversed.

In expressing an opinion on the *third bill of exceptions*, the court will endeavour to state their ideas in as concise and plain a manner as possible, as to the grounds and prin-ciples of the law in relation to the true location of tracts of land in this state. It is the unquestionable right and jurisdiction of the courts to decide on the construction of grants and deeds, as well as to the description of the land which is to be transferred, as the quality and nature of the estate, subject only to the exception of the case of a latent ambiguity. The location must correspond with, and be in conformity to, the true construction of the grant as declared by the court. In construing grants the courts are to re-gard, and to be governed by, the intention of the parties, to be collected from the deed, if not incompatible with some rule or principle of law, and nothing extrinsic or *de hors* the deed is to be recurred to for ascertaining such in-tention, unless in the case of a latent ambiguity. If there is a call in the grant and course and distance, and they do not agree, the call is to be gratified if it is imperative or peremptory, and the course and distance are to be rejected, and the line is to be elongated or shortened to bring it to the call. It is the exclusive right and province of the jury to ascertain and fix calls according to the evidence legally admissible for that purpose, and the calls being ascertained, the lines must run accordingly, and will be controled thereby, if the course and distance do not correspond with such calls. To show the true position of a tree, head of a creek, or line of a tract of land called for, recourse is often had to the relative situation of contiguous tracts, and va-rious other circumstances, having the tendency to identify the call. There certainly can be no distinction between a line of a tract of land called for, and any natural or artifi-cial boundary; they are all the subjects of proof, and when ascertained by the jury, are equally to be regarded, and the course and distance are to be governed by them, if the call is imperative. The reason which induced the courts, in construing grants, to give a preference to the location according to calls was, because such construction was most beneficial to the grantee in giving him more land, and that

JUNE 1820. principle having been adopted, has been generally adhered

Carroll
vs
Norwood

to, although in some few cases it might operate to the dis-
advantage of the grantee. Almost all locations, where
there are calls as well as course and distance, are locations
with a double aspect, because the course and distance sel-
dom, if ever, agree with the calls. If that reason was to
govern the courts in their decisions, the consequence would
be, the transferring the power and jurisdiction of the courts
to the jury in the exposition of grants, and the greatest un-
certainty would prevail, and the greatest evils would result
from it—contradictory determinations, without any power
to control them. It is admitted that the calls in this case
are imperative; indeed there can be no doubt about it; and
being peremptory, they must be complied with, and the
course and distance must be controled by them.

The court are of opinion, that the fifth, sixth and seventh
lines of *The United Friendship*, must run with and bind on
the lines of the land of *George Yates*, and that the fourth
line of *The United Friendship* must be controled by the
said fifth, sixth and seventh lines of said land, and ter-
minate on the line of *Yates's* land, wherever the jury may
find it will strike the same by elongating or shortening the
said fourth line. The court are of opinion, that the opinion
expressed by the court below in the *third bill of exceptions*
be reversed.

JUDGMENT REVERSED.

A *procedendo* being awarded, the cause was remitted to
the county court for a new trial. After it was so remitted,
the deaths of both the original defendants were suggested;
and the heirs of *Edward Norwood* appeared and were made
defendants. The deaths of *Nicholas Carroll, Robert Car-
ier, Abraham Van Bibber*, and *William Smith*, four of the
lessors of the plaintiff, were also suggested; and it seems,
by the bill of exceptions, although not so stated in the re-
cord, that *Washington Van Bibber* was made a party lessor
in the place of *Abraham Van Bibber*.

In ejectment on
separate demises
for undivided
parts of the land,
before the trial,
all the lessors, ex-
cept one, had
parted with their
legal interest in
the land, and the
nature of his in-
terest had been
converted from an
undivided portion

4. At the new trial of the cause in the county court, in
September 1817, the plaintiff read in evidence the certificate
of survey of a tract of land called *Roper's Increase* surveyed
for *Thomas Roper* on the 20th of October 1667, and the grant
of a tract called *The Enlargement*, for which this action was
brought, granted to *John Israel* on the 10th of July 1724, for
100 acres. He also gave in evidence, that said two tracts were

June 1820.

Carroll
vs
Norwood

truly located by him on the plots. And it was admitted by the parties, that the whole of said two tracts came by sundry mesne conveyances, and the will of the said *John Israel,* their father, to, and were legally vested in, *John Lacon Israel, Gilbert Talbot Israel,* and *Robert Israel,* in equal portions, in fee simple, as tenants in common, previous to the year 1751, except two tracts of 100 acres each, parts of *Yates his Forbearance,* which had before that time been legally vested, in fee simple, one in *Joshua Sewell,* and the other in *Robert Chapman,* by two several deeds from *John Yate,* which are located by the plaintiff on the plots, and which he offered evidence to prove were truly located. He further gave in evidence a deed from *J. L. Israel* to *George Buchanan,* for 150 acres, part of the tract called *Yates his Forbearance,* dated the 7th of July 1731; and gave evidence that said deed was truly located by him on the plots. He also read in evidence a deed from *G. T. Israel,* and a certain *Charles Ridgely,* dated the 26th of June 1732, to *Charles Carroll,* surgeon, of and for all the said *G. T. Israel's* part of the tracts of land called *Yates his Forbearance,* and *The Enlargement;* and a deed from *C. Carroll,* surgeon, to *Benjamin Tasker, Daniel Dulany, Charles Carroll,* of *Annapolis,* and *Daniel Carroll,* of *Duddington* Manor, of and for four undivided fifth parts, one fifth to each, of the land so conveyed to him by *G. T. Israel,* dated the 25th of September 1733. He also gave in evidence, that some time after the execution of the deed last mentioned, and before the 26th of August 1743, *C. Carroll,* of *Duddington* Manor, in the last mentioned deed named, died, and that all his right and interest under said last mentioned deed, to the lands therein mentioned, descended to *Daniel Carroll,* his eldest son and heir at law, and his heirs. He also read in evidence a deed from *R. Israel* to *C. Carroll,* of *Annapolis,* purporting to be for the use of himself and of *C. Carroll,* surgeon, *C. Carroll,* son of *Daniel, D. Dulany,* and *B. Tasker,* dated the 26th of August 1743, for all the said *R. Israel's* part of the lands called *Enlargement,* and *Yates his Forbearance.* He also read in evidence a bond of conveyance from *J. L. Israel* to *John Hurd,* for 100 acres of land, part of the tract called *Yates his Forbearance,* dated the 24th of December 1730, and an assignment of said bond to *B. Tasker,* dated the 25th of February 1745, and a deed from *J. L. Israel* to *B. Tasker,*

In the whole, to a several and entire interest in part—*Held,* that although the plaintiff can recover less than he claims, yet it must consist of the same nature with that claimed. If he claims 100 acres, less than 100 may be recovered; if he claims an undivided moiety, an undivided third may be recovered, or any undivided portion less than a moiety; but he cannot recover an undivided part when he claims an entirety, nor an entirety when he demands an undivided portion.

If an ejectment is brought for land by the name of E, which is covered by another tract called F, to which the plaintiff makes title, can he recover?

Whether or not two deeds executed in 1750, under which the plaintiff claimed, could operate otherwise than as deeds of bargain and sale, he, to prove livery of seisin with those deeds, having offered evidence, that from the time of their execution, the grantees therein named, and those claiming under them, down to the lessors of the plaintiff, were in possession of the land, claiming it under the title derived from the grantors, until they were ejected by the defendant? Whether or not the recital in a deed from W to D, was evidence of the existence of a deed stated to have been executed to them by their father for the same land, so as to exclude the presumption of his having died intestate as to that land; altho' the same reci-

*tal was not evidence of the land having been conveyed to them by the recited deed? To recover in an action of ejectment, the lessors of the plaintiff must have a legal title in the land at the commencement and trial of the cause*

purporting to be for the use of himself and *C. Carroll*, Esq. of *Annapolis*, *C. Carroll*, surgeon, *D. Dulany*, and *C. Carroll*, son of *Daniel*, by the name of *Charles Carroll*, of *Duddington*, of and for the land mentioned and describ-. ed in said bond to *Hurd*, being all the residue and remainder of any or all the lands devised to him by his father, *John Israel*, except 151 acres conveyed to *G. Buchanan*, which deed bears date on the 15th of June 1750, and was recorded by a decree of the chancellor on the 18th of December 1794. And the plaintiff and defendants admitted that the said deed must be so located as to lie entirely within the lines of *Yates his Forbearance* as truly located. And that all the undivided part, estate and interest, of *C. Carroll*, of *Annapolis*, in the said lands, or any of them, under and by virtue of said deeds, or any of them, descended to, and became legally vested in, *Charles Carroll*, of *Carrollton*, one of the lessors of the plaintiff, and his heirs; and that all the undivided part, &c. of *B. Tasker*, in and to the said lands, or any of them, became legally vested, by sundry mesne conveyances, in *Robert Carter*, one of the lessors of the plaintiff, and his heirs; and that all the undivided part, &c. of *C. Carroll*, of *Duddington*, in and to the said lands, or any of them, descended to, and became. legally vested in, *Daniel Carroll* of *Duddington*, one of the lessors of the plaintiff; and his heirs; and that all the undivided part, &c. of *C. Carroll*, surgeon, in and to the said lands, or any of them, became vested, by sundry mesne conveyances, in *Nicholas Carroll*, one of the lessors of the plaintiff, and his heirs; and that said lessors, so far as they had any title to or estate in said lands, or any part of them, held the same as tenants in common at the time of bringing this action. And the plaintiff, to prove that all the interest and estate of *D. Dulany* of and in said lands, or any of them, became vested, by sundry descents and mesne conveyances, in *Abraham Vanbibber*, *Isaac Vanbibber*, and *William Smith*, lessors of the plaintiff, and their heirs, and that they held the same as tenants in common with each other, and with the other lessors of the plaintiff, at the time of bringing this action, read in evidence the last will and testament of the said *D. Dulany*, dated the 26th February 1752, in which will no mention is made of the land in dispute, nor is there any residuary devise, which the plaintiff relied on as evidence that said *Daniel Du-*

*lany* died intestate of said lands, and left *Daniel Dulany*, barrister, of *Annapolis*, his eldest son and heir at law. And also a deed from *Walter Dulany*, in said will mentioned, bearing date the 26th of November 1759, to *D. Dulany*, barrister, in the said will mentioned, son of *Daniel*, of and for one moiety of the part of the said lands, to which *D. Dulany*, the father, had been entitled by virtue of the aforesaid deeds, or any of them. And also a deed from *D. Dulany*, barrister, son of *Daniel*, to said *Walter*, for one moiety of said lands, bearing date the same day with the deed last above mentioned, but executed after it. [See these deeds recited in 1 *Harr. & Johns.* 170, 171.] And also a deed from *D. Dulany*, barrister, to his son *Daniel Dulany*, for the other moiety of said lands, which deed is dated on the 16th of September 1772. He also gave in evidence, that *D. Dulany*, (the third,) the grantee in the last mentioned deed, being entitled under said deed to the said moiety, and possessed thereof, joined and adhered to the king of *Great Britain* in the war of the revolution, in the year 1777, whereby all his estate and interest of and in said moiety became confiscated to this state, and was, on the 4th day of May, 1785, sold by the intendant of the revenue of the state, claiming to act by authority of and according to law, to *William Smith*, one of the lessors of the plaintiff, *Josias Carvill Hall*, and *Aquila Hall*; which said *J. C. Hall* and *A. Hall*, afterwards assigned and transferred their parts and interest, under said sale, to said *W. Smith*, and *I. Vanbibber*, two of the lessors of the plaintiff, to which said *W. Smith* and *I. Vanbibber*, the chancellor of the state, claiming to act for and on behalf of the state, and by authority of law, conveyed the moiety last above mentioned, by two several deeds, one to *W. Smith*, bearing date on the 12th of December 1792, for four fifth parts of said moiety; and the other to *I. Van Bibber*, bearing date the 11th of October 1792, for one fifth part of said moiety. He also gave evidence, that before the war of the revolution, and after the date of the above mentioned deed from *D. Dulany*, of *Annapolis*, barrister, to *W. Dulany*, his brother, the said *W. Dulany* died, leaving *Daniel Dulany*, his eldest son and heir at law, otherwise called *Daniel Dulany*, of *Walter*, to whom all the said *Walter's* right, interest and estate, in the said land called *The Enlargement*, and *Yates his For-*

June 1820.

Carroll
vs
Norwood.

*bearance*, being the right demised as aforesaid from *D. Du-lany*, (the first,) in and to one undivided moiety of the one undivided fifth part, which originally belonged as afore-said to *D. Dulany*, (the first,) descended and became vest-ed in him in fee simple; and that *D. Dulany*, son of *Wal-ter*, during said war, adhered to and joined the king of *Great Britain* against the United States of *America*, where-by his interest in said lands became and was confiscated to this state, and was afterwards sold by the Intendant of the Revenue of the State, claiming to act by authority of law, to *Abraham Van Bibber*, one of the original lessors of the plaintiff, and to *Thomas Stone* and *Daniel of Saint Thomas Jenifer*, whose rights under and by virtue of said sale, were afterwards legally transferred to *A. Van Bibber*, to whom the chancellor of the state, claim-ing to act for and on behalf of the state, and by authority of law, conveyed the last mentioned moiety in fee simple, in and by two several deeds dated, one on the 5th of Februa-ry 1787, and the other the 19th of September 1792, for one half of the said moiety*(a)*.    He also gave in evidence, that *W. Dulany* and *D. Dulany*, sons of the first named *D. Dulany*, and those claiming under them, were in the actual possession of the said undivided tenth parts held by their said father as above mentioned, holding the same un-der the title derived from their said father, as tenants in common, with *C. Carroll* of *Annapolis*, *C. Carroll* of *Dud-dington*, *B. Tasker*, and *C. Carroll*, surgeon, and those claiming under them respectively, till they were turned out of possession, as hereinafter mentioned, by *E.* and *S. Nor-wood*. He also gave in evidence, that *A. Van Bibber* died on or about the 11th of June 1805, having first made and duly published his last will and testament in writing, by which he devised all his right, interest and estate, of and in the said undivided moiety of a fifth part, or undivided tenth part, to *Washington Van Bibber*, and his heirs, who hath since been made a party in this cause as the law di-rects*(b)*.    The defendants then read in evidence the patent of a tract of land called *The United Friendship*, granted to *John Larkin*, on the 1st of September 1687, for 700 acres; and a deed from the aforesaid *J. L. Israel* to *Ed-*

*(a)* See the title set out in 1 *Harr. & Johns.* 167.

*(b)* It is not so stated in the record.

*ward Norwood*, dated the 28th of March 1760, for a tract of land called *The Land of Goshen*, another called *Addition*, and another called *Cannon's Delight*; "also all other rights, titles, interests, claims and demands, and unto any tracts or parcels of land devised to said *J. L. Israel* by his father's will, or that as heir at law became the property of him the said *J. L. Israel*." And gave in evidence that said patent and deed were truly located by the defendants on the plots in this cause. And also gave in evidence, which was admitted by the plaintiff, that *E.* and *S. Norwood*, formerly defendants in this cause, were at the time of bringing this action, and long before, seized in fee, as tenants in common, of and in the tract of land called *The United Friendship*, and of and in all the estate, right, title and interest, in and to the lands called *The Enlargement* and *Yates his Forbearance*, which vested in the first mentioned *E. Norwood* under the deed to him from *J. L. Israel*; and that all the estate, title and interest, of *E.* and *S. Norwood*, the former defendants, in and to said lands, or any of them, hath passed to, and is now legally vested in, the present defendants in this cause. They also gave in evidence, which was admitted by the plaintiff, that a bill in chancery was filed by the lessors of the plaintiff against *J. L. Israel*, for ordering the recording of the deed from *J. L. Israel* to *B. Tasker*, and a decree thereon made, which is herein above set forth. They also read in evidence the act of assembly of 1815, *chapter* 147, which it is admitted was passed at the instance of the lessors of the plaintiff, who then composed the *Baltimore Company*, hereinafter mentioned, which act, it was agreed, should be read from any of the printed copies of the acts of the general assembly of this state. They also gave in evidence, and it was admitted by the plaintiff, that a bill in chancery, since the institution of this suit, was filed by a part of the lessors of the plaintiff against the remaining lessors of the plaintiff, which parties were known by the name of *The Baltimore Company*, for a division of the lands held in common by them, upon which bill and proceedings thereon, a partition was decreed and made of the tract of land called *Yates his Forbearance*, in and by which decree and partition all that part of the said tract which, according to its true location, covers and includes any part of the tract called *The Enlargement*, as located by the plaintiff on the plots in this

cause, was decreed and assigned to *Washington Van Bib-ber*, *in severalty*.  The plaintiff then gave in evidence, that the original lessors of the plaintiff, or those under whom they claim under and by virtue of the several deeds from *J. L. Israel*, *G. T. Israel*, and *R. Israel*, were, before the time of bringing this action, actually ousted and turned out by *E.* and *S. Norwood*, the original defendants in this cause, of and from all that part of the tract of land called *The Enlargement*, for which this action was brought, as located on the plots in this cause, which is included within the lines of the tract called *Yates his Forbearance*, as located by him on said plots, and held the same till the present time.  He also gave in evidence, that at the time of the execution of the deed from *J. L. Israel* to *E. Norwood*, of the 28th of March 1760, the said *E. Norwood*, the grantee, had notice of the said deed of the 15th of June 1750, from *J. L. Israel* to *B. Tasker*, and others.  He also gave in evidence, that at the time of making the several deeds from *R. Israel* to *C. Carroll*, Esquire, of *Annapolis*, and others, and from *J. L. Israel* to *B. Tasker*, Esquire, and others, the persons to whom, or for whose use the said deeds and each of them were severally executed, received actual possession and livery of seizin of and in the lands purported and intended to be conveyed in and by those deeds severally and respectively.  And the evidence which he offered to prove livery of seizin from *J. L. Israel* to *Tasker*, and others, consisted in this, that he produced the bond from *J. L. Israel* to *Hurd*, and the assignment thereof to *B. Tasker*, and company, and proved, that soon after the date of that bond, *Hurd* was in possession of the land in said deed mentioned, and remained in possession till the time of the assignment, or some short time after, when he delivered the possession thereof to the agent of *B. Tasker*, *C. Carroll*, of *Annapolis*, *C. Carroll*, surgeon, *C. Carroll*, of *Duddington*, and *D. Dulany*, who, and those claiming under them as aforesaid, remained in the actual possession and occupancy of said land till the execution of the deed last mentioned, and from that time till they were turned out of possession by *E.* and *S. Norwood* as aforesaid; and that *E. Norwood*, father of *E.* and *S. Norwood*, lived on *The United Friendship*, in the neighbourhood of the land mentioned in said bond, and set up a claim thereto at the time when possessi-

on was delivered to the agent as aforesaid, and from that time to the date of the deed of the 28th of March 1760, And the evidence which he offered to prove livery of seizin with the said deed from *R. Israel* to *C. Carroll*, of *Annapolis*, for the use of himself, and others, consisted in this, that he gave evidence to prove, that from the time of the execution of said deed the grantees, or the *cestui que use* therein mentioned, and those claiming under them, down to the lessors of the plaintiff, were in possession of said land, claiming it under the title derived in manner aforesaid, from *J. L. Israel, R. Israel* and *G. T. Israel,* until they were turned out of possession by *E.* and *S. Norwood* in manner aforesaid. And the evidence which he offered to prove that at the time when the deed from *J. L. Israel* to *E. Norwood* was made, the said *Norwood* had notice of the deed from *J. L. Israel* to *B. Tasker,* for the use of himself, and others, consisted in the depositions heretofore taken and filed in this cause, and given in evidence by consent. The defendants then prayed the court for their direction to the jury, that under the evidence aforesaid, the plaintiff was not entitled to recover; which direction the court, [*Dorsey,* Ch. J.] gave. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued in this court, at this term, before BUCHANAN, EARLE and JOHNSON, J.

*Harper,* for the appellants, cited the act of 1785, *ch.* 72, *s.* 11. *Carroll's lessee vs. Norwood,* 1 *Harr. & Johns.* 174, 175, 179. *Norwood vs. Carroll's lessee, ante* ——. *Griffith's et al. lessee, vs. Moore,* in the General Court May term 1791. *Runnington's Eject.* 227, 410. 1 *Mod.* 252. 5 *Mod.* 33. 2 *Blk. Com.* 324. *Gilb. Com. Pl.* 104. *Hob.* 5, and *Moale vs. Howard.*

*Winder* and *Pinkney,* for the appellees, referred to 3 *Bac. Ab.* tit. *Feoffment,* (A.) 145, (B. 2) 151. *Ibid* tit. *Joint-tenants, &c.* (L.) 708. *Phill. Evid.* 356, and *Co. Litt.* 273.

JOHNSON, J. delivered the opinion of the court. This was an action of ejectment brought to recover two tracts of land called *Brown's Adventure* and *The Enlargement.* The plaintiff having made out no case for the recovery of *Brown's Adventure,* the question was, whether he had a

JUNE 1820.

Carroll
vs
Norwood

June 1820. title to the *whole* of *The Enlargement*, or *any part* there-
of, for which he was *competent* to recover in this action?

Carroll
vs
Norwood

In the discussion of this case several points have been
ably and ingeniously argued, on which it is not necessary
for this court to form an opinion. The first was, whether
two deeds, the one by *Robert Israel* to *Charles Carroll*,
bearing date the 26th of August 1748, and the other from
*John L. Israel* to *Benjamin Tasker*, dated the 15th of
June 1750, under which deeds the plaintiff claims, could
*operate otherwise* than as deeds of *bargain and sale*; and
secondly, whether the recital contained in the deeds of in-
denture between *Walter Dulany* and *Daniel Dulany*, and
*e converso*, was evidence of the *existence* of the *deed exe-
cuted*, purporting to have conveyed the land, so as to *ex-
clude* their *father* from having died intestate as to that
land; and yet, that the same *recital* was not evidence of the
land *having been conveyed* to them by the recited deed.

In the view the court has taken of this case, these points
need not be determined. For if the plaintiff is incompe-
tent to recover, supposing the deeds from the two *Israel's*
to pass the land, and to vest the legal estate therein in the
manner contended for on the part of the plaintiff, and sup-
posing the recital in the deed from *Walter Dulany* to be
adequate to cause full efficacy to the deeds of partition be-
tween *Daniel* and *Walter Dulany*, still giving them such
effect, the plaintiff cannot recover in this action; and as the
opinion of the court below was in general, that on the facts
as stated, the plaintiff had no right to recover, the judg-
ment must be affirmed.

The lessors of the plaintiff derive their title to the land
through the deeds from *Robert* and *John L. Israel*, and it
is contended that those deeds passed the land *to five persons
equally in fee as tenants in common.* The portion of the
land that *Daniel Dulany* was entitled to, having become
liable to confiscation, was sold as confiscated land to *Abra-
ham Van Bibber*, one of the lessors of the plaintiff, who
having died pending the suit, on his death being suggested,
his son *Washington Van Bibber* was made a party to the
action.

Pending the present action a bill was filed in the court
of chancery, by part of the lessors of the plaintiff, against
the rest of them, (all of the parties being known by the
name of *The Baltimore Company*,) and a decree was ob-

tained, by which *all that portion of The Enlargement*,
which was owned in common by the company, and compre-
hended in *Yates his Forbearance*, was *vested in severalty*
in *Washington Van Bibber*.   Subsequent to that partition,
*The Baltimore Company* applied to the legislature, and ob-
tained the passage of the act of 1815, *ch* 147, to *vest* in
*Henry W. Rogers, Samuel J. Donaldson,* and *Thomas L.*
*Emory*, all the land which belonged to *The Baltimore*
*Company,* and had been sold by them, but not conveyed,
and all the land that then remained unsold *and undivided,*
in trust, for them to give deeds to those to whom any land
had been sold and not conveyed, on compliance with the
terms of sale, and to lay off, *sell and convey, the residue* of
the land for the benefit of the company.   Had this act pre-
ceded the application to the court of chancery for a parti-
tion, or before the partition took place, the whole of *The*
*Enlargement*, in which the company had an interest, would
have been transferred to the trustees, but as the division
separated *Washington Van Bibber's* part, it is unaffected
by this act of the legislature.

It thus appearing, that all the lessors of the plaintiff had,
before the trial of the cause, parted with their *legal* inte-
rest in the land, except *Washington Van Bibber*, and the
nature of his interest being converted from an undivided
portion in the whole, to a *several* and entire interest in part,
the question is, was the plaintiff competent to recover?

An action of ejectment, although in form a fiction, is in
substance a remedy pointed out to him who has a right to
land, of which he is wrongfully deprived; it is the *title of the*
*lessor*, and *not* of the *nominal lessee*, that is to be decided.
If pending the action the *nominal lease expires*, the term
may be enlarged; if the lessor dies, his representatives are
to be made parties.   But if the cause was to depend on the
validity of the *nominal lease*, the term could not be enlar-
ged, nor could the cause be affected by the *death* of the les-
sor; and yet before the passage of a recent act of assembly
(1801, *ch*. 74, *s*. 38,) the death of his lessor, (there being
but one,) abated the suit, although the nominal lease had a
long time to run.   To recover in this action of ejectment,
the lessors of the plaintiff must have a legal estate in the
land at the commencement and trial of the cause, and
therefore, as all the lessors had parted with their legal es-
tates before the trial, except *Washington Van Bibber*, no
recovery could be had, unless for his portion, if it be com-

petent to recover that in the present action. The declara-
tion has no count on a demise claiming the *entire part* of any
portion of the land; and although in actions of ejectment
the plaintiff can recover less than he claims, yet it *must*
consist of the *same nature* with that claimed. If he claims
100 acres, less than 100 may be recovered; if he claims an
undivided moiety, an undivided third may be recovered, or
any undivided portion less than a moiety; but he cannot re-
cover an *undivided* part when he claims an *entirety*, nor
an *entirety* when he demands an *undivided portion*.

JUDGMENT AFFIRMED.