JOSEPH CRESAP'S LESSEE, *vs.* HENRY HUTSON. —*December* 1850.

A plaintiff in an ejectment suit, after the commencement of the action, but before trial, conveyed by deed, his interest in the lands in controversy, to a third party. HELD : That this deed was a bar to his recovery.

To recover in ejectment, the lessor of the plaintiff must have the legal estate in the land, both at the commencement and *trial* of the cause.

The title to lands draws to it the seizin, so that one who has title, is by force of his title, in possession, until an ouster or disseizin is committed upon him, by some one entering upon the land, with a claim of adverse possession.

Where a person claims by possession only, without showing any title, he must show an exclusive, adverse possession by enclosure, and his claim cannot extend beyond his enclosure.

There must be a real and substantial inclosure, an actual occupancy, or *pos-sessio pedis*, which is definite, positive, and notorious, to constitute an adverse possession, when that is the only defence to countervail the legal title.

No adverse possession short of twenty years, will destroy the legal title.

The deed of a plaintiff in ejectment, conveying the lands in dispute, made after commencement of the suit, is not void, because the defendant, at the date of its execution, held adverse possession of the land.

Two brothers whose farms adjoined, were both mistaken about their division line. HELD, that this mistake could not affect the title of either, And the one who held over on the other, cannot claim adverse possession, because, he and the real owner supposed the division line to run in a different direction : neither held adversely to the other.

A *bona fide* conveyance of the land in dispute, for a valuable consideration, made after commencement of the suit by the plaintiff, in an action of ejectment, is not void for maintenance, or champerty.

A defence on warrant, is not necessarily a defence by adverse possession.

A defendant, at first, took defence on warant for the whole land in dispute, which he afterwards abandoned as to part. HELD, that the plaintiff could not make use of the first defence, in order to show adverse possession of the whole in the defendant.

If a party pleads *payment*, and afterwards substitutes for that plea *non est factum*, the former plea cannot be relied on, to prove the instrument his deed.

It is no objection to the competency of a witness, that he is the acting attorney for the party, in whose favor he offers to testify. Such objections go to the credibility, and not the competency of a witness.

APPEAL from *Allegany* county court.

This was an action of ejectment, brought on the 10th of August, 1844, by the appellant against the appellee, for lots No. 3501, 3502 and part of "*Deer Park*," situated in *Allegany* county. Plea not guilty, and defence on warrant.

The following are the prominent facts in the case, necessary to an understanding of the several bills of exceptions. *James D. Cresap* devised by his will, certain lands to his son *Joseph*, the lessor of the plaintiff, and others to his son *James*, all of which are described by metes and bounds in the will. These lands lay contiguous to each other, but the division line had never been run by the two brothers. On the 7th of March, 1844, *James* sold and conveyed his lands thus given him, to *Henry Hutson*, the defendant. Shortly after this conveyance,

*Joseph Cresap* and *Hutson* had their lines run, when it was discovered, that the division line was not where it had been supposed to be. By this discovery, it was ascertained that *James Cresap* before, and *Hutson* after, the sale, had claimed and possessed the lots in controversy, or a part of them, which belonged to *Joseph Cresap*, under the will.

On the 8th of March, 1847, before the trial of the case, *Joseph Cresap*, the plaintiff, conveyed the whole of his farm, including the land in dispute, to *Elizabeth C. Tomlinson* and *Hannah Gastell*. At the trial, the defendant offered this deed in evidence, and the court, upon his application, determined that it put the plaintiff out of court, being of opinion that the plaintiff, to recover in ejectment, must be able to show title at the time of trial, as well as at the commencement of the suit, and the plaintiff was non-suited.

This non-suit was, upon further consideration, stricken out and the cause reinstated, the court being of opinion, that the deed could not convey the land in controversy, the same being at the time, in the adverse possession of the defendant. To meet this objection, the defendant obtained leave to narrow his defence, with a view to show that some portion of the land in dispute, had been in the actual possession of the plaintiff, thereby to give him a constructive possession of the whole, and make the deed good for the land in controversy.

Much testimony was taken, and various title papers, plots, &c., offered in evidence, all of which sufficiently appear from the exceptions taken, and the opinion of this court.

1st EXCEPTION. Was taken to the refusal of the court, (MARTIN, C. J., and MARSHALL, A. J.,) to instruct the jury that there was no proof of such part possession of the lots in dispute by the plaintiff, as would invest him with constructive possession of the whole.

2ND EXCEPTION. To the rejection of the prayer, that the parties holding lots divided by a line not distinctly ascertained, both intending to hold to the line wherever it might be, but neither to hold any part of the other's land, if they found upon an accurate survey that the true line was wide from the place

they supposed, and that one was holding upon the other, such accidental and involuntary holding of part, though with title to the whole, would not vest him with constructive possession of the whole, and therefore the plaintiff's deed did not convey the lands in controversy.

3RD EXCEPTION. To the rejection of the prayer, that if defendant took defence for, and claimed the whole of, the lots in dispute, at the time of the execution of said deed, it is void, and plaintiff is not thereby precluded from recovering, notwithstanding defendant may have narrowed his defence so as to exclude part of the lots from his claims.

4TH EXCEPTION. To the rejection of the instruction that the whole of the lands are covered by the claims and pretensions of defendant, and by admission of this fact in pleading, he is now precluded from saying he only claims a part of the lots.

5TH EXCEPTION. To the rejection of the instruction that if that part of "Deer Park," claimed by defendant, never was in the actual possession of the plaintiff; but was at the institution of this suit in the possession and use of defendant, who claimed it as his own property, then the deed in question as to that part is void, and does not preclude the plaintiff from recovering the same in this action.

6TH EXCEPTION. To the rejection of the instruction that the said deed of the plaintiff is void for champerty and maintenance.

7TH EXCEPTION. To the overruling an objection to the competency of one of the counsel for the defendant, who took part in the trial of the cause, as a witness in behalf of his client.

8TH EXCEPTION. The plaintiff offered a bill in chancery filed by defendant against James Cresap, to prove defendant's admissions in relation to his possession of the land in controversy, which evidence the court rejected.

9TH EXCEPTION. The plaintiff offered to prove that while his father, James D. Cresap, was writing his will, under which the parties claim, the plot AB was on the table before him. This evidence was rejected as inadmissible.

10TH EXCEPTION. To the rejection of the instruction that if the plaintiff had title at the time of the demise laid, and the commencement of the suit, he can recover notwithstanding his deed of the 8th of March, 1847.

11TH EXCEPTION. To the rejection of the instruction that the cutting of timber by plaintiff beyond the true location of the division line, is not such possession as would give him constructive possession of the whole lots, if at the time of so cutting he did not claim or intend to claim title by said cutting to the lots on which said cutting was done.

The verdict and judgment was for the defendant, and the plaintiff appealed.

The cause was argued before SPENCE, MAGRUDER and FRICK, J.

By McKAIG and PRICE, for the appellant, and
By GEO. A. PEARRE, for the appellee.

The several bills of exception indicate the points made in argument.

MAGRUDER, J., delivered the opinion of this court.

This appeal is taken from a judgment rendered in *Allegany* county court. The suit was brought to recover divers parcels of land for a part of which the defendant took defence. There are many exceptions to be found in the record, few questions however are presented by them.

The plaintiff undertook to prove title to the lands in controversy, and we are to assume that the will of *James D. Cresap,* his father, gave him title to the lands, and that the title continued in him until a conveyance was made by him of all the land to *Elizabeth C. Tomlinson* and *Hannah Gastell,* by deed bearing date the 8th day of March 1847.

Whether this deed was a bar to the recovery of the lands in controversy, seems to be almost the only question arising in the case, and almost all the exceptions were taken because of a refusal by the court, to give to the jury instructions designed

35     v.9

to tell them that the deed spoken of, did not hinder the plaintiff from obtaining a verdict.

We find, to be sure, in some of the exceptions, that the court after refusing to give the instructions which were asked for, did sometimes give others. For these however the plaintiff does not claim a reversal, and moreover whether correct or not, does not appear to be very material, as the plaintiff was not injured by them.

We infer from the various prayers made by the plaintiff, that he claimed the verdict notwithstanding his conveyance: 1st. Because the deed being of a later date than the lease declared on, could not prejudice the supposed title of the lessee; and 2nd. Because it was an attempt, pending the suit too, to convey land, of which another had the adverse possession.

If the deed of the plaintiff does not for either of these reasons prevent a recovery, it is thought that there is nothing in the record which will warrant a reversal of this judgment.

Of course it cannot be denied that in order to sustain an action of ejectment, there must be proof of title in the lessor at the time when the alleged lease commenced. Without this proof the lease would give no title. But it is said, that if the plaintiff had a title when the suit commenced he may maintain the action, because no subsequent conveyance by him could prejudice the lessee whose lease is admitted. This would be true if there really was a lease, and the lessee was the real plaintiff. But there is none, and for the want of one the plaintiff could not recover, but for the terms imposed upon the defendant when he asks to take the place of the casual ejector.

Care is to be taken that these fictions do not work wrong to the defendant. If the plaintiff succeeds he recovers the whole of the term declared upon, and in his action for the *mesne* profits, he has to prove, to be sure, that the defendant retained the possession during the time for which he claims the rents and profits, but the judgment in ejectment is all the proof that is required, that he was entitled to the demised premises during the whole term mentioned in his lease. If in the action for *mesne* profits, the plaintiff recover damages as long as the defendant

retains the possession, the latter might be compelled to pay damages twice, as no doubt the vendee pending the suit might recover all that could be claimed for the occupation of the premises subsequently to the deed to him, provided the deed be valid. A second action of ejectment might also be brought by the purchaser. For some such reasons as these, this court said in 5 *H. & J.*, 173: "To recover in this action of ejectment, the lessor of the plaintiff must have the legal estate in the land at the *commencement* and *trial* of the cause," and decided that no recovery could be had of the shares claimed by the lessors who had previously to "the trial parted with their estates." This was no *dictum* of the judge who pronounced the opinion, but was the principal ground for an affirmance of the judgment. As this has been the law of Maryland ever since the year 1820, it can scarcely be necessary for us in deciding this case to inquire, whether this be the law elsewhere?

But we are told that the deed from the plaintiff's lessor, dated 8th March 1847, cannot defeat his action, because at the time of its execution, the defendant had an adverse possession of this land.

None of the authorities which have been cited, make any distinction in this respect between a sale before the institution of a suit, and a sale while such suit is pending. The question is, whether the defendant had such a possession at the date of this deed, as would render a deed for the land by the plaintiff's lessor a nullity? If there be in *Maryland* any such law, it is strange that it was unknown to the many learned jurists, who in times past have been at our bar and on our bench. Very many and most important cases of which we have reports, certainly might have been defeated, if such be our law.

In the case of *Davidson vs. Beatty*, (3 *H. & McH.*, 594,) the plaintiff's lessor obtained his title as late as 1796, from a man who as far back as the year 1768 lost the occupancy, and he thought the title, to the property in dispute. The man who entered upon it, and it was supposed dispossessed him of it, sold it. The land was laid off into lots, which formed a part of *Georgetown*, in the district of *Columbia*, and upon many

of them houses had been erected before, and were occupied at the date of, the deed from *Gordon* to the plaintiff's lessor, and yet no one, after the decision of the questions touching *Gordon's* title, notwithstanding the judgment of condemnation, supposed that any adverse possession short of twenty years would have destroyed the deed to *Davidson,* if that deed had been properly acknowledged and recorded.

The same objection might have been taken to the title of the plaintiff's lessor in the case of *Ridgley's lessee against Ogle and Leonard,* (4 *H. & McH.,* 123.) Many other cases might be mentioned, in which the plaintiff's title commenced after it was supposed that the tenant in possession had so long occupied the land, that adverse, continued and uninterrupted possession, was sufficient to give him a good title.   See also *Gittings vs. Hall,* 1 *H. & J.,* 14.

In 2nd *Smith's* leading cases, *p.* 413, we are told that "it is a settled principle in the law of apparently all the States, that title to lands from the commonwealth, draws the seizin or actual legal possession to it; so that one who has title derived out of the commonwealth, is, by force of his title, in possession until an ouster or disseizin is committed by some one entering upon the land, with a claim of possession adversely to him."

Among the numerous American cases to which reference is given for this, is that of *Miller vs. Shaw,* 7 *Serg. & Rawle,* 129.   In that case Judge *Duncan* said:   "Constructive possession always accompanies the right.   The right always draws to it the possession, and it there remains until seized by the wrong-doer, whose possession is strictly *possessio pedis,* who must necessarily be confined to what he has grasped—his real and actual possession.   Beyond that no length of time will protect him; because beyond that the owner's possession has never been changed.   "These," he adds, "are the dictates of common sense, of common justice and of common law."

In some of the States it would seem to be somewhat doubtful what constitutes this adverse possession in a trespasser, and which turns the real owner out of possession.   In the very case to which a reference has been given in *Sergeant & Rawle,*

the judges seem to have discovered that even then (in 1821,) this was in *Maryland, res adjudicata.* They refer to one of our own decisions (*Davidson's lessee, vs. Beatty,* 3 *H. & McH.* 594,) where the law is distinctly laid down, "that where a person claims by possession only, without showing any title, he must show an exclusive adverse possession by enclosure, and his claim cannot extend beyond his enclosure." In 2 *H. & J.*, 156, the court expressed it thus, "a naked possession, (possession without right,) is adversary only to the extent of actual enclosure."

In 2*nd Johnson's N. Y. Repts.*, 234, it is laid down that "there must be a real and substantial inclosure, an actual occupancy, a *possessio pedis,* which is definite, positive and notorious, to constitute an adverse possession, when that is the only defence and is to countervail a legal title." In *Barr vs. Gratz,* (4 *Wheat,* 213,) the Supreme Court held, that a patent granted for vacant land vested the patentee, by operation of law, with a constructive actual seizin of the whole land contained within the patent." In 2*nd Gill & Johnson,* 183, Judge *Earle* says, "it is a case of constant occurrence, where a grantor having a right of entry on land, conveys it to another and therewith necessarily a power to maintain an ejectment for it."

The pending of this suit, at the date of the deed, could not render it a void deed. The plaintiff surely cannot say this was a sale of a pretended title, nor was it the sale of a law suit, as might be said of the case of *Hammond vs. Dorsey's lessee,* which we learn in 5 *H. & J.*, 267, was entered for the use of *Richard Ridgely,* prosecuted at his expense and for his benefit, and being for his use was considered to be his suit.

Those who have gone before us have not left us to settle the law, that the plaintiff, to sustain an action of ejectment, must have a title not only at the commencement of the suit, but also at the trial, and certainly never discovered that the deed which defeats the suit, if made after its commencement and before the trial, was, for any of the reasons suggested, void. If there be any such law in England, it would seem that it was not found applicable to " our local and other circumstances."

We cannot think that because of any of the circumstances

spoken of in these various prayers, the jury (if satisfied of them,) ought to have been required to give a verdict for the plaintiff.

There is certainly reason to believe that the plaintiff and his brother were both of them mistaken about the division line, but any such mistake cannot affect the title of either. Surely the defendant cannot claim by adverse possession, because he and the real owner supposed the line which divided their farms to run in a different direction. Neither held adversely to the other.

We see nothing in the record, which would warrant us in saying, that the plaintiff, when he executed this deed, was guilty either of maintenance or champerty. The case affords us no opportunity of enforcing or recognizing such law on this occasion.

At the time this deed was executed, the defendant had taken a defence, which he afterwards abandoned; and the plaintiff would make use of this defence, in order to avoid his own deed. This he could not do at the trial, even if the defendant had not narrowed his defence; a defence upon warrant, is not necessarily a defence by adverse possession. If the defendant could have given himself an adverse possession by his defence, as originally taken, when it is abandoned, the plaintiff could not well use it for any such purpose. If a defendant pleads *payment*, and afterwards substitutes for that plea, *non est factum*, the former plea cannot be relied on, to prove the instrument to be his deed. The plaintiff must take judgment against the casual ejector, for all the land undefended, and surely cannot make the defendant hold any part of it adversely.

There remains one other exception in the record of which we must dispose. It presents the question, whether an attorney for a suitor, can also be a witness for him?

The same question was put to us in a case (*Beatly vs. Davis*,) which has been argued and decided this term, (*ante* 211.) In this case, the witness was offered for examination, after he had opened the case. We have been referred to several *English* and *American* cases, which, it is thought, sustain this objection.

These cases certainly furnish proof, that courts of justice are not disposed to approve of such a practice. One of the judges said, "it is not fit, that he should be heard as a witness." In the other *English* case, the judge said, "I think it a very objectionable proceeding on the part of an attorney, to give evidence, when acting as advocate in the cause." In both cases, the verdict was set aside. But in this case, if we had the power, we should not for this reason, grant a new trial. The objection to counsel acting as a witness, does not apply, where the testimony is such as was offered in this case. We must leave the practice as we find it, and let it go to the credibility, rather than to the competency of a witness.

We find in none of the exceptions to which the record calls our attention, any reason for reversing this judgment.

JUDGMENT AFFIRMED.