# ADAM C. WARNER *vs.* CHARLES H. HARDY and others' Lessee.

A certified copy of an instrument required to be recorded, proves itself as *prima facie* evidence of all circumstances necessary to give it validity.

The statement in a deed of the residence of the grantor in a particular county, is *prima facie* evidence that he resided in such county.

Where, in the acknowledgment of a deed, the justices certify that the grantors appeared, &c., *"they being known to us* to be the persons" named, &c., it is a sufficient compliance with the act of 1831, ch. 205.

The certificate of the clerk, that the justices "before whom the annexed acknowledgment was made, and who have thereto subscribed their names, *were, at the time of so doing,"* justices, duly commissioned and sworn, is sufficient under the act of 1766, ch. 14.

The acknowledgment by the parties and the signing thereof by the justices, are, in contemplation of law, but one act; and the words, *"were at the time of so doing,"* relate as well to the one as the other.

The circumstances, that the lands mentioned in a certain agreement were in Howard county and contained one hundred and ninety-six acres, more or less, and that the declaration in an ejectment suit claims two hundred and three acres, and the deed to the plaintiffs conveys one hundred and ninety acres, in the same county, are not sufficient to show that the lands in the agreement and those in dispute are the same.

A party may offer his evidence in the order preferred by himself, but the testimony as proposed must appear to be pertinent to the matter in controversy, or accompanied by an offer to show its relevancy in the progress of the cause.

Since the act of 1852, ch. 177, sec. 2, it is not necessary, in an action of ejectment, to prove possession by enclosures.

The admission of immaterial evidence on one side is no reason for admitting similar testimony on the other, and where evidence is not admissible for the purpose for which it is offered, it is properly rejected.

The lease in an action of ejectment is a fiction, the lessor being the real plaintiff, and though the lessee be a natural person, who, prior to the suit,

Warner *vs.* Hardy.

had sold his interest in the very land in dispute, still he is not to be considered as really interested in the result.

The fictitious proceedings in ejectment are necessary to that form of action, and must not be allowed to prejudice the parties.

A prayer, "that upon the whole evidence it is competent for the jury to find for the defendant," is too general under the act of 1825, ch. 117.

APPEAL from the Circuit Court for Howard county.

*Ejectment,* by the appellees against the appellant, for a tract of land lying in said county, described in the declaration by metes and bounds, containing two hundred and three and a quarter acres, more or less. The *nar* counts on two demises to James G. Hardy, the nominal plaintiff, the first from Charles H. Hardy and others, and the second from Evan D. and Ormond Hammond. Plea, *non cul.* and defence on title.

*1st Exception.* The plaintiffs having traced title to the lands in dispute to Eden Hammond, who died in possession thereof in 1834, leaving two sons, Evan D. and Ormand Hammond, his sole heirs at law, then offered in evidence a certified copy of a deed from said sons to them, dated the 24th of December 1850, for the land in dispute, containing about one hundred and ninety acres, more or less.

This deed, upon its face, purports to be made between Evan D. Hammond and wife, "of Frederick county," and Ormond Hammond and wife, "of Talbot county," of the one part; and the plaintiffs of the other part. The acknowledgments of the grantors, made before justices of the peace of Frederick and Talbot counties respectively, state, that before said justices personally appeared the grantors, "they being known to us to be the persons who are named and described as, and professing to be, the parties of the first part," &c. The certificates of the clerks of these respective counties stated, that the justices "before whom the annexed acknowledgments were made and who have thereto subscribed their names, were, at the time of so doing, justices of the peace of the State of Maryland in and for" said counties, "duly commissioned and sworn."

The defendant objected to the admissibility of this deed in evidence, but the court, (BREWER, J.,) overruled the objection and admitted it in evidence. To this ruling the defendant excepted.

*2nd Exception.* The defendant then offered to read in evidence an agreement, under the hand and seal of Evan D. Hammond, dated the 17th of February 1844, which stated, in substance, that said Hammond, with one Everest and wife, on the 7th of September 1841, sold to James G. Hardy a tract of land lying in Howard District, containing one hundred and ninety-six acres, more or less, for $500; that part of the purchase money being unpaid, one Shaffer, who said he had lately purchased at sheriff's sale Hardy's interest in the land, tendered and paid to Hammond the balance due on the purchase, and demanded of Hammond a deed for the land; that Hammond was willing to execute the deed as early as practicable, and bound himself, in the penalty of $500, to make a good deed to Shaffer for the land, provided he could do so without loss to himself, arising from the fact that Hardy was the original purchaser, he being unwilling to execute the deed until Shaffer removes this difficulty, the said Hammond not wishing to involve himself in any controversy that may arise between Shaffer and Hardy. And the defendant, at the same time, offered to prove, that said Evan D. Hammond was the same person who was one of the grantors in the deed to the plaintiffs of December 1850, and proposed to follow up this offer with proof that Shaffer, under whom the defendant claims, purchased at sheriff's sale, in 1844, all the interest of James G. Hardy, the nominal plaintiff, in the land in dispute in this case, and that all said interest passed to him by the sheriff's return; but the court, on objection by the plaintiffs, refused to allow said testimony, so as aforesaid offered, to be given. To this ruling the defendant excepted.

*3rd Exception.* The plaintiffs having proved, that, in 1811, the lands in dispute were rented by Eden Hammond to the witness, in consideration that he and his brother would enclose them, and that they did enclose part of the fields, and having stated that they (the plaintiffs,) relied on title derived by patent from the State as well as on possession for more than twenty years at one time in those under whom they claim, the defendant then offered to prove, to rebut the plaintiffs' title so far as it relies on possession as aforesaid, that the lands had never

been enclosed for twenty years at one time, but the court rejected this evidence so offered, and to this ruling the defendant excepted.

*4th Exception.* The defendant then further offered to prove, that in 1844, Shaffer purchased at sheriff's sale, under a judgment and execution against James G. Hardy, all the latter's interest in the land claimed in this suit, and that said Hardy is the same person as the nominal plaintiff in this action, but the court refused to allow this proof to be given, and to this ruling the defendant excepted.

*5th Exception.* The plaintiffs then offered in evidence a patent and various deeds and wills, composing their chain of title, and proved that the description in the declaration comprehends a portion of "Chesnut Hill," and of the "Addition to Chesnut Hill," the whole being part of "Chesnut Hill." They then proved, that Eden Hammond came into possession of the land described in the declaration in 1811, and remained in possession thereof till his death, in 1834, leaving his two sons, the parties to the deed to the plaintiffs of 1850, his sole heirs at law; that witness, with his brother, rented the land from the said Eden, in consideration of their fencing in some of the fields, which they did, but witness removed from the neighborhood some twenty or thirty years ago, and knows nothing of the enclosures since then. They further proved by another witness, that the land so possessed by said Eden contained from one hundred and ninety to two hundred acres, and that the whole was generally known by the name of "Chesnut Hill." The defendant then proposed to enquire of the witness, whether, to his personal knowledge, the said Eden Hammond possessed the said lands, by enclosure, peaceably, uninterrupted and exclusively for twenty years at one time, but the court refused to allow the question to be asked, and answered by the witness, and to this ruling the defendant excepted.

*6th Exception.* The defendant then proved, that at the date of the said deed to the plaintiffs of December 1850, he was in possession of the lands, claiming them adversely to all the world in right of Shaffer, whose widow he married, and who had been in possession thereof since 1844, except fifty acres,

possessed since that time by James G. Hardy.  He then asked the following instructions to the jury:

1st.  If they find that at the date of the deed from Evan D. and Ormond Hammond to the plaintiffs, the defendant was in adverse possession of the land in dispute, the plaintiffs are not entitled to recover, on the title conveyed by said deed, on the demise of the grantees.  (This prayer the defendant abandoned in argument in this court, on the authority of the case of *Cresap vs. Hutson,* 9 *Gill,* 277.)

2nd.  That to entitle the plaintiffs to recover, they must show title to the lands claimed from the State, or by possession for more than twenty years before suit by those under whom they claim.

3rd.  That from the whole evidence, it is competent for the jury to find a verdict for the defendant, and they are not bound to find a verdict for the plaintiffs.

The court rejected each and all of these prayer, and to this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*William H. G. Dorsey* and *Robert J. Brent* for the appellant.

*1st Exception.*  There is no evidence of the actual residence of Evan D. Hammond and wife, other than the statement in the deed that they are "of Frederick county."  It has not been decided that such a statement, as against third parties, is sufficient *prima facie* evidence of the county of the grantor's residence to admit an official copy of the recorded deed in evidence, as of a deed properly recorded.  And it would be strange if the plaintiffs could, by their own recital *ex parte,* furnish evidence of a fact material to their title, and as to which fact the defendant has a right to evidence under oath.  The Court of Appeals have said, that the fact of a party acknowledging a release or acquittance to an administrator, is *prima facie* evidence of a temporary or transient residence in the

county where the acknowledgment is made. *Carroll vs. Tyler,* 2 *H. & G.,* 57. But this was not said in relation to a deed of lands. On the contrary, it was decided, that a temporary residence in a county was not sufficient to justify an acknowledgment of a deed of land in that county, it not being the county wherein the lands were situated. *Hall vs. Gittings,* 2 *H. & J.,* 395, 380. *Gittings vs. Hall,* 1 *H. & J.,* 28. Unless therefore this court is prepared to decide, that a recital in a deed under which we do not claim, is evidence against us, the office copy was clearly inadmissible, and should have been rejected as but a copy of a paper not required or authorized to be recorded. *Budd vs. Brooke,* 3 *Gill,* 232. The same objection applies to the acknowledgment in Talbot county.

Again, we object to the admissibility of this deed, because the certificate of the justices does not pursue the act of 1831, ch. 205, sec. 4. Which requires they "shall, of their own knowledge, or by oral testimony, under oath, received by them, be satisfied" the persons acknowledging, are the persons named in the deed, and shall "certify in their certificates of said acknowledgments, the fact of their being so satisfied." Now there is here no certificate *quo modo* the identity of the parties is known to them, or that they were satisfied. The law imperatively requires such a certificate, not only that they are satisfied, but *quo modo* satisfied, by using the terms "*so satisfied.*" See also the act of 1844, ch. 85.

Again the act of 1766, ch. 14, sec. 3, requires when a deed is acknowledged out of the county where the land lies, that the clerk of the county should certify "the justices to have been such at the time of making the acknowledgment." But the certificate here is, that they were justices, duly commissioned, at the time of subscribing their names, which is defective, because, *non constat,* the acknowledgment was in fact made before qualified and commissioned justices, though it does appear that they were duly qualified when they subscribed their names. 2 *H. & J.,* 380.

*2nd Exception.* Evan D. Hammond, who signed the agreement in this exception, is of course estopped from denying

the facts therein recited. *Lloyd vs. Burgess,* 4 *Gill,* 192. It is true there is no offer to identify the lands in dispute, as those mentioned in this agreement, but there is *prima facie* evidence, that they are the same: the paper states that the lands therein referred to, lie in Howard district, and contain 196 acres, more or less; the declaration claims 203¼ acres, and the deed to the plaintiffs describes the land as 190 acres. We submit, until the contrary is shown, this is *prima facie* evidence of the identity of the lands. But conceding there is no evidence of identity, still the order of proof is a matter for the party who offers the evidence, and there is nothing to prevent the defendant, in case this evidence had been admitted, from afterwards proving the identity of the lands. 9 *G. & J.,* 476, *Caton vs. Carter.* Therefore the question arises, whether we had not a right to introduce the rejected proof?

If we had been permitted to prove the offered facts, they would have placed the defendant lawfully in possession of these lands, under a contract of sale from Evan D. Hammond, with Hardy, whose rights passed through his assignee Shaffer, to defendant, and it would moreover have appeared that Shaffer was treated with, and recognised by said Hammond, as a person entitled to the lawful possession of the premises, and equitably entitled by virtue of his purchase at sheriff's sale and payment of all the purchase money, to a legal deed of conveyance. Now the principle of law undoubtedly is, that where a party holds lands under a contract of purchase, or with the privity and permission of the legal owners, no action of ejectment can be brought without a previous demand of possession; for the reason, that a lawful possessor, who holds by contract or permission from the plaintiff, or those under whom he claims, cannot be converted, at the will and caprice of the legal owner, and without notice or demand, into a wrong-doer and trespasser. *Adams Eject.,* 107, *note* 1, 121. 6 *Maule & Selw.,* 148, *Doe vs. Boulton.* 13 *East.,* 210, *Right vs. Beard.* 1 *Barn. & Cres.,* 448, *Doe vs. Jackson.* 7 *G. & J.,* 20, *Cole vs. Hebb.*

*4th Exception.* We consider this exception next, as it is

more german to the matter involved in the second. If James G. Hardy had sold these lands to Shaffer, it is clear that he could afterwards acquire no title to the same which would not, *eo instanti*, operate and inure to the benefit of his vendee. 1 *John's Cases*, 90. 2 *H. & J.*, 402, *Dorsey vs. Gassaway*. The principle of estoppel equally operates where the sale is made, as in this case, by the officer of the law, who "*pro hac vice*" is the attorney and agent of the debtor in the execution. It is true, a fictitious demise is laid to James G. Hardy, the legal plaintiff, dated since the purchase by Shaffer of all Hardy's right in these lands; but if a real person is made the lessee in the fictitious demise, we know of no rule of law which would exempt the real party, thus suing on the fictitious lease, from the rules of law which would have bound him in taking a real lease from third parties, for the same property which he had previously sold. 4 *H. & McH.*, 289. On the contrary, all courts have uniformly held, that the fictitious lease must be such as the lessors could legally have made, and therefore no recovery can be had if the lessors of the plaintiff acquired title subsequently to the date of the fictitious demise. *Binney vs. Chesapeake & Ohio Canal Co.*, 8 *Pet.*, 218. Therefore we submit that we ought to have been allowed to prove the facts offered, because they show that James G. Hardy acquired no right under the fictitious lease, but the same enured, as a real lease would have done, to the benefit of the legal title vested in Shaffer, under whom the defendant claims.

*3rd Exception.* The plaintiff had introduced proof of possession of the whole "lands in dispute," by Eden Hammond, in the fact of his renting them, and had introduced evidence of partial enclosures, thus relying on a claim by possession, or at least giving evidence to prove possession in 1811. The defendant was therefore entitled to rebut this alleged title by possession, and for that purpose, to enquire if the said lands had been enclosed for twenty years at one time. In the case of *Hoye vs. Swan*, 5 *Md. Rep.*, 248, this court ruled:—1st. That a title by patent carries with it to the patentee, and those

deriving title by conveyance or descent from him, the legal possession of the patented lands. 2nd. That to oust the true legal owner of patented lands, by adverse possession, it must be by actual enclosures, and only to the extent of actual enclosure. 3rd. That the case of *Brooke vs. Neale*, did not justify the inference of Judge Dorsey, that possession without enclosures, for twenty years at one time, would confer a legal title. It results, therefore, that when the plaintiff had claimed and relied on proof of possession in 1811, by renting to a tenant the whole, and by enclosure of part, the defendant was entitled to rebut this evidence, and show by positive and direct testimony, that the lands had not been enclosed for twenty years at one time, thereby destroying and neutralising the whole claim so far as it rested on possession. Whether these lands had been shown previously, to have been patented or not, we had a right to rebut the possession given in evidence, by showing it was not by enclosures, and thus force the plaintiff to show a paper title.

*5th Exception.* None of the title papers profess to convey any land by the metes and bounds in the declaration, which gives no other description than by metes and bounds. This court has said, that where the only description of the land is by abuttals stated in the *nar* they must be proved as laid, and that in an action of trespass *quare clausum fregit*, where possession merely is sufficient to maintain the action. *Tyson vs. Shueey*, 5 *Md. Rep.*, 551. The act of 1852, ch. 177, sec. 2, allows a recovery without showing a patent, but here the patent is shown, and the result is that the title transmitted through that patent draws with and to it, in whose ever hands it may vest the legal possession, unless that possession is invaded for twenty consecutive years by hostile enclosures. *Hoye vs. Swan*, 5 *Md. Rep.*, 248. 9 *Gill*, 275. Therefore the plaintiff was bound, on this declaration, to show a devolution of the legal title on him to the land included in the metes and bounds, by either a regular chain of title derived from the patentee, or by adversary possession with enclosures for twenty years. Now the deeds and muniments of title,

on their face, do not purport to convey any land with the boundaries stated in the *nar*, and it depends upon parol evidence as to the boundaries stated in the deeds and wills subdividing "Chesnut Hill," whether any of them affect this land. We submit that no court looking at these muniments, would be justified in saying, as matter of law, that the title has been regularly traced by deeds and wills, from the patentee to the plaintiffs. To say the least of it, the plaintiffs' claim must be made out by parol evidence in addition to his title papers. We had therefore the right to rebut the evidence of possession, by showing that it had not been by actual enclosure, uninterrupted and exclusive for twenty years.

*6th Exception.* Our *second* prayer ought to have been granted, as it states a familiar principle of the ejectment law of Maryland. The act of 1852, ch. 177, applies to cases where no patent is offered, but here a patent was offered, and none therefore can be presumed. 6 *H. & J.*, 336, *Beall vs. Lynn.*

By rejecting the third prayer the court virtually took the case from the jury, and judicially pronounced a perfect title in the plaintiff, and this in reference to a title dependent on parol evidence of many material facts, such as descents to heirs, metes and bounds of title papers. Such a proposition we cannot further debate. The prayer is not too general. 5 *Md. Rep.*, 433, *Stewart vs. Spedden. Ibid.*, 540, *Tyson vs. Shueey.*

*J. T. B. Dorsey* and *Thomas Donaldson* for the appellees, argued:

1st. That the deed from the Hammonds to the plaintiffs was admissible. This was an exemplified copy, and therefore better evidence than the original, for it is *prima facie* evidence of all circumstances necessary to give it validity. 6 *H. & J.*, 234, *Craufurd vs. The State. Ibid.*, 276, *Hurn vs. Soper.* It states that the grantors resided in the counties where the acknowledgments were taken, and this is *prima facie* sufficient. 2 *H. & G.*, 57, *Carroll vs. Tyler.* As to the clerk's

certificate, it is in the form which has always been in use in this State, (1 *Ev. Harris*, 22,) and is sufficient. Again, we say the acknowledgment was also in proper form. The act of 1831 requires the fact of their being satisfied of the identity of the grantors, to be certified by the justices, but does not require a certificate of *how* they are satisfied; but if it did, the expression in these acknowledgments, "they being *known* to us," &c., is clearly a statement that the justices were satisfied *of their own knowledge*, and this is the form generally adopted throughout the State. *Latrobe's Justice, sec.* 1318, (4th Ed.)

2nd. The agreement signed by Evan D. Hammond and the return of the sheriff were properly ruled out; because, even if they referred to the same land, an equitable title cannot be set up in ejectment to defeat the legal title of plaintiffs' lessors. *Dorsey on Ejectment*, 27, 28. 4 *H. & McH.*, 507, *Ridgely vs. Britton.* 2 *H. & J.*, 82, *note, Saunders vs. Simpson.* 10 *G. & J.*, 443, 455, 456, *Matthews vs. Ward.* Even if equitable circumstances could be enquired into in such a case, there is no proof that the land referred to in said agreement is the same as that in dispute, nor did the defendant offer to follow up the agreement by any such proof. If there were such proof of identity, yet the agreement is contingent in its terms, and the defendant did not offer to follow it up by proof, that the difficulties which are recited in it, as preventing a conveyance by Hammond, had been removed. And there is no proof, or offer of proof, in the second exception, that the defendant was legally entitled to claim under Shaffer.

3rd. The sale by the sheriff in 1844 of any interest which James G. Hardy, the nominal plaintiff, was then supposed to have in the land in dispute, is entirely irrelevant to this case, unless the *legal title* had been traced to him, which is not pretended, the real parties plaintiffs being the lessors, and the lessee being merely a nominal party to sustain the fiction on which the action is based. In the case of infant lessors, as here, the father or guardian should be made plaintiff, as security for costs; but in all other respects the action remains

subject to the same rules as if John Doe had been the lessee named. *Adams on Ejectment*, 218. *Dorsey on Ejectment*, 24. 5 *H. & J.*, 223, *Boring vs. Lemmon*. Even if the legal title were sold by the sheriff, there must be some memorandum in writing to satisfy the statute of frauds, as evidence of the title of the purchaser, and none such is shown or pretended here except the return, which was not made in due time. The sale was made in 1844, and there was no return until October 1852, after the deed from the Hammonds to the plaintiffs. 6 *H. & J.*, 204, *Barney vs. Patterson*. 1 *H. & G.*, 172, *Fenwick vs. Floyd*. 6 *G. & J.*, 306, *Estep & Hall, vs. Weems*.

4th. Though before 1852 enclosure was necessary as proof of possession in a *wrong doer*, the rule was always otherwise where the one claiming possession had the legal title, as in this case, or even when he claimed under a written document. 2 *Smith's Lead. Cases*, 494. *Brooke vs. Neal*, in *Dorsey on Ejectment*, 40, notes. *Adams on Ejectment*, 281, 282. But the act of 1852, ch. 177, sec. 2, passed, and in effect before the present suit was instituted, settles this point conclusively.

5th. The second prayer was rightly refused; because, since the act of 1852, ch. 177, sec. 2, it is not necessary to show patent from the State, but it will be presumed, if the title is otherwise good; so that the plaintiffs might recover, independently both of the proof of title from the State and of the proof of mere possession. 4 *H. & McH.*, 73, *Plummer vs. Lane*.

6th. The third prayer was rightly refused; because it was altogether too general and indefinite, and calculated to mislead the jury, by giving the impression that the *legal* result of the evidence was in favor of the defendant. If it was meant as an opinion, expressing the legal result of the facts stated as in favor of the defendant, it cannot be sustained; for the facts, as shown in the several bills of exception, all embodied in the last, establish a clear title in the plaintiffs' lessors, on one or other of the demises; and under those facts it would not have been morally competent for the jury to find a verdict for the defendant.

'TUCK, J., delivered the opinion of this court.

Three objections were taken to the admissibility of the deed of 24th December 1850, all of which were properly ruled against the defendant below.

A certified copy of an instrument required by law to be recorded, proves itself as *prima facie* evidence of all circumstances necessary to give it validity. 6 *H. & J.*, 234, *Craufurd vs. State*. *Ante*, 78, *Barry vs. Hoffman*.

Upon the question of residence of the grantors, we do not perceive that there is any difference in principle between this and the case of *Carroll vs. Tyler*, 2 *H. & G.*, 57, where it was decided that the acknowledgment of a receipt was *prima facie* evidence that the party resided in the county in which it was taken, and certified under the act of 1809, ch. 168, which requires such papers to be acknowledged in the county of the party's residence.

The justices of the peace certified that the persons acknowledging the deed, were known to them to be the parties named as and professing to be parties to the same. This, we think, was a sufficient compliance with the act of 1831, ch. 205. It shows that they were satisfied of the identity of the parties from their own knowledge; the law requires a substantial compliance. This was decided in *Hollingsworth vs. McDonald*, 2 *H. & J.*, 236, in relation to an acknowledgment under the act of 1715, ch. 47, where the form is prescribed. 7 *G. & J.*, 260, *Young vs. State*.

The certificate of the clerks to this deed is sufficient under the act of 1766, ch. 14. The words, "were at the time of so doing," relate as well to the acknowledgment by the parties, as to the signing of the certificate. In contemplation of law they are but one act. The acknowledgment in 2 *H. & J.*, 380, referred to on the part of the appellant, is more specially drawn; but the certificates before us are in accordance with a form which has been in use for many years, and should not be questioned by this court. 1 *Ev. Har.*, 22.

We approve of the court's refusal to admit the agreement offered in the second exception. It is not understood to have

68    v. 6

been tendered for the purpose of showing title in the defendant, or in any other person. For that object it was clearly inadmissible. But it is insisted that it ought to have been received, because it showed, with other evidence thereafter to have been offered, that the defendant occupied such a position in relation to the land in controversy, as entitled him to notice and demand before the commencement of the suit. This position cannot be maintained. The identity of the land is by no means apparent. No person, looking at this agreement alone, can say that the lands are the same, and the defendant did not accompany his offer by a proposal to adduce evidence of identity. It is said that there was *prima facie* evidence on this point; but this conclusion depended upon inferences which the court could not have been expected to draw from the evidence then in the cause, as preliminary to receiving the agreement. The circumstances that the lands mentioned in the agreement were in Howard county, and contained one hundred and ninety-six acres, more or less; that the declaration claims two hundred and three acres in the same county; and that the deed to the plaintiffs conveys one hundred and ninety acres in that county, without any other fact to show that the lands are the same, were not sufficient to allow the reception of this paper to defeat the claim of the present plaintiffs, who are not the parties with whom the agreement was made, but purchasers without notice of an equity in Shaffer, or in any person claiming under him. Whatever ground of defence, for want of demand before suit, this agreement might have furnished as against Evan D. Hammond, in an action for the same lands, it is very certain that his grantees, without notice, cannot be affected by any such proof. It is true that a party may, generally, offer his evidence in the order preferred by himself, (9 *Gill & Johns.,* 476,) but the testimony, as proposed, must appear to be pertinent to the matter in controversy, or be accompanied by an offer to show its relevancy in the progress of the cause. 6 *G. & J.,* 481, *Goodhand vs. Benton.* 5 *Md. Rep.,* 433, *Stewart vs. Spedden.* Moreover, there is no evidence or offer to prove

that Shaffer, or any person claiming under him, had entered upon the premises under this agreement, and therefore the cases relied upon do not apply.

The ruling of the court in the *third* exception is not objectionable. The plaintiffs offered proof, that Hammond, under whom they claimed, had held the lands by possession since 1811, by renting to a person, in consideration that the tenant would enclose them, and that part had been enclosed; the plaintiffs stating at the time, that they relied on title by patent and by possession for more than twenty years. The defendant then offered to prove, "that the lands had never been enclosed for more than twenty years at one time," in order to rebut the title of the plaintiffs so far as it relied on possession. This evidence the court excluded. The question was, whether the lands had been possessed for twenty years, not whether they had been held by enclosures for that time. Whatever the law was before the act of 1852, ch. 177, sec. 2, it is certain, that since its passage it is not necessary to prove possession by enclosures. It was, therefore, immaterial to the issue, whether the plaintiffs, or those under whom they claimed, had held the land under fences or not. They offered proof of possession for more than twenty years; the defendant offered no such evidence in his behalf. The act was gratified by the plaintiffs' proof, and their right to rely on such possession could not be affected by the inquiry, whether it was by inclosure or not. If, as was said, this evidence on the part of the plaintiffs was also immaterial, it was no reason for admitting similar testimony on the other side. 4 *Md. Rep.*, 255. 5 *Md. Rep.*, 385. 6 *Gill & Johns.*, 481. It was not admissible for the purpose for which it was offered, and was therefore properly rejected. 3 *G. & J.*, 435, *Sothoron vs. Weems.*

In disposing of the fourth exception, we need not determine what would have been the effect of the purchase at the sheriff's sale, upon the title of James G. Hardy, if he were claiming the land. The point now presented seeks to convert the fictions in the action of ejectment into realities, and thereby defeat the very object for which they were introduced. The lease in this case is a fictitious proceeding, as in any other action of

ejectment. The lessors are the real plaintiffs. Even if James G. Hardy, named as lessee, be a natural person, he is not to be considered as really interested in the result. By the terms on which the tenant is allowed to come in and defend the suit, the claimant becomes the actual plaintiff; and as these proceedings are fictions, necessary to this form of action, they must not be allowed to prejudice the parties. *Cresap vs. Hutson,* 9 *Gill,* 274.

The fifth exception sets out the plaintiffs' title, composed of a patent, deeds, wills and parol proof. It appears that Eden Hammond, under whom the plaintiffs claim, came into possession of the land described in the declaration about the year 1811, and remained in possession until his death, in 1834, and that some of the fields were fenced by one of his tenants, in consideration of his tenancy. The defendant then proposed to inquire of one of the witnesses, "whether, to his personal knowledge, Eden Hammond possessed the lands, by enclosure, peaceably, uninterrupted and exclusively for twenty years at one time," but the court refused to allow the question to be put. We think that this point depends, in a great degree, on the doctrine announced under the third exception. As the plaintiffs had offered proof of possession of the land as claimed in the declaration, which explicitly states the extent of their demand, it was immaterial whether the possession was by enclosure or not. If there had been none at any time, the possession might have been such as to gratify the requirements of the act of 1852, ch. 177.

The first prayer in the sixth exception was properly refused, upon the principle decided in *Cresap vs. Hutson,* 9 *Gill,* 277.

The second prayer, by confining the plaintiffs to proof of title under a patent, or by possession for more than twenty years by those under whom they claim, overlooks the evidence of title, "otherwise good," furnished by the deeds, wills and parol proof offered on the part of the plaintiffs, which, as we think, brought the case within the second section of the act of 1852, ch. 177.

The third prayer presented no point or question for the consideration of the court. To ask the court to instruct the jury,

that "upon the whole evidence it is competent for them to find for the defendant," is substantially affirming, that if they believe the testimony they ought so to find, which is the same, in principle, as the case of *Cook vs. Duvall*, 9 *Gill*, 460. It is unnecessary to express any opinion on the last clause of the prayer, "that the jury were not bound to find for the plaintiffs," because if the first proposition was wrong, it was not error to reject the whole. This prayer is different from that cited from *Stewart vs. Spedden*, 5 *Md. Rep.*, 444, which was sustained because of a total failure of evidence on a material part of the plaintiff's case, without proof of which he could not have recovered at all. The case of *Leopard vs. Canal Co.*, 1 *Gill*, 228, is an authority against the allowance of general prayers, and does not support the present exception. See, also, *Hatton vs. McClish*, *Ante*, 407, in which the act of 1825, ch. 117, and the decisions upon it, are referred to.

Concurring with the circuit court on all the exceptions, the judgment is affirmed.

*Judgment affirmed.*